IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| AMERICAN IMAGING SERVICES, INC., | § | |
| | § | |
| PLAINTIFF, | § | |
| VS. | § | CIV. NO. 3:09-CV-733-M |
| | § | |
| AUTODESK, INC., | § | JURY TRIAL DEMANDED |
| | § | |
| DEFENDANT. | § | |

## PLAINTIFF'S TRIAL BRIEF ON EQUITABLE INTERVENING RIGHTS

Autodesk asserts the affirmative defense that AISI's claim for patent infringement is barred, in whole or in part, by 35 U.S.C. § 252. (Doc. 30, at ¶ 8, see also ¶6). Autodesk characterizes its defense as one of equitable intervening rights. (Doc. 237 at p. 15, section V(B)). This equitable remedy is premised on the notion that a defendant who did not infringe an original patent and who has invested in preparing to sell a product prior to the time of the issuance of a reissue patent should be allowed to recoup its investment in that preparation, essentially by being allowed to infringe the reissue patent until its investment is recouped. Although the application of this doctrine to Autodesk is legally questionable, even if it does apply, Autodesk will not be able to provide any evidence that it made any investment in any AutoCAD products prior to the issuance of the '384 Patent in June 2008 that it has not been able to recoup.

## LAW ON EQUITABLE INTERVENING RIGHTS

The doctrine of equitable intervening rights is rooted in 35 U.S.C. § 252 and generally provides that when certain conditions are met, a court in equity may find that a reissued patent may not affect the right of an entity to perform activities that were not previously infringing but

---

**PLAINTIFF'S TRIAL BRIEF ON EQUITABLE INTERVENING RIGHTS**     Page 1

that become infringing due to the issuance of a reissued patent as long as substantial preparation for such activities began prior to the reissue. *Marine Polymer Techs., Inc. v. HemCon, Inc.*, 672 F.3d 1350, 1361-62 (Fed. Cir. 2012); *Seattle Box Co., v. Indus. Crating & Packing, Inc.*, 756 F.2d 1574, 1579 (Fed. Cir. 1985).

In considering whether to grant this equitable remedy, courts consider several factors including whether (1) "substantial preparation" was made by the infringer before the reissue patent issued; (2) the infringer continued manufacturing the accused product before the reissue on advice of its patent counsel; (3) there were existing orders or contracts; (4) non-infringing goods cannot be manufactured from the inventory used to manufacture the infringing product and the cost of conversion; (5) there is a long period of sales and operations before the patent reissued from which no damages can be assessed; and (6) the infringer has not made profits sufficient to recoup its investment. *See, e.g.*, *Henrob Ltd. v. Systemtechnik GMBH & Co.*, No. 05-CV-73214-DT, 2009 WL 3188572, at *16 (E.D. Mich. Sept. 29, 2009) (denying motion for equitable intervening rights); *Visto Corp. v. Sproqit Techs., Inc.*, 413 F. Supp. 2d 1073, 1090-91 (N.D. Cal. 2006) (denying motion for equitable intervening rights). "Issues of fact underlying the equitable intervening rights are matters for court, not jury, disposition." *Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*, 563 F.3d 1358, 1373 (Fed. Cir. 2009).

"Generally, the goal of the court is to fashion a remedy that would allow the infringing party to recoup its investment. Only in extraordinary circumstances will a court allow a party with intervening rights to continue to manufacture and sell the infringing product for the duration of the patent. 'This would effectively extinguish the patentee's rights under the guise of protecting the investment of an infringer.'" *Thayer v. Nydigger*, No. 95-2004-AS, 1999 WL 372552, at *12-13 (D. Or. Apr. 15, 1999) (denying equitable intervening rights where there was

no evidence of the extent of investment and lack of recoupment) (internal citation omitted).

## THE EVIDENCE CANNOT SUPPORT A CLAIM
## OF EQUITABLE INTERVENING RIGHTS

1.  Autodesk's Equitable Intervening Rights Defense is Inconsistent with its Laches Defense.

Autodesk's claim of equitable intervening rights is based on the second sentence of 35 U.S.C. § 252, which provides that:

> The court before which such matter is in question may provide for the continued manufacture, use, offer for sale, or sale of the thing made, purchased, offered for sale, used, or imported as specified, or for the manufacture, use, offer for sale, or sale in the United States of which substantial preparation was made before the grant of the reissue, and the court may also provide for the continued practice of any process patented by the reissue that is practiced, or for the practice of which substantial preparation was made, before the grant of the reissue, **to the extent and under such terms as the court deems equitable** for the protection of investments made or business commenced before the grant of the reissue.

(emphasis added). However, Autodesk's laches claim is based on a theory that AISI's current infringement claims for the '384 Patent are barred because AISI believed that it had an infringement claim against Autodesk for the original '393 Patent in 1997.

Autodesk cannot have it both ways. It cannot allege that it is entitled to continue activities that it began before the reissue on the premise that it would not have infringed a claim of the original '393 Patent while also asserting that the current claims are time barred because AISI believed Autodesk infringed a claim of the original '393 Patent. As Autodesk has pointed out, and which is undisputed, the Asserted Claims of the '384 Patent are narrower than the original '393 claims.[1] For example, Asserted Claims 14 and 15 are narrowed version of original claims 14 and 15. It is axiomatic that if a party infringes a narrow claim, it necessarily infringes

---

[1] Autodesk pled that "The reissued claims of the '384 patent are substantially identical to those of the original underlying '393 patent." (Doc. 30 at ¶59).

the broader claim. Thus, if Autodesk infringes now, it infringed in 1997 and the doctrine of equitable intervening rights should not apply. *See, e.g., Henkel Corp. v. Coral, Inc.*, 754 F. Supp. 1280, 1320-21 (N.D. Ill. 1990) (finding that equitable intervening rights should not apply to "narrowed reissues"); *Mendenhall v. Astec Industries, Inc.*, No. CV-1-86-229, 1988 WL 188449, at *51 (E.D. Tenn. Oct. 31, 1988) (same).

    2.    <u>The Facts Do Not Support A Finding Of Equitable Intervening Rights.</u>

AISI anticipates that Autodesk will not present any evidence on several of the factors that courts consider in determining whether to apply equitable intervening rights. While Autodesk may be able to show that "substantial preparation" was made before the reissue patent issued and that orders had been placed for the accused AutoCAD products, it will not be able to show that it relied on advice of counsel in offering to sell those products or making its preparations, as no opinion of counsel or any documents reflecting reliance on counsel have been produced in this case. "A Court may properly take into consideration the presence or absence of reliance in exercising its judgment on the equities in the case." *Halliburton Co. v. Western Co. of North Am.*, No. 89-1128, 1989 WL 77199 at *2 (Fed. Cir. Jul. 17, 1989) (affirming denial of intervening rights).

Further, there will not be any evidence that Autodesk has not made profits sufficient to recoup its investment costs. To the contrary, the Court will hear evidence that there was an extremely long period of sales by Autodesk before the patent reissued for which damages cannot be assessed. "A 'long period of sales and operations before the patent reissued from which no damages can be assessed' weighs against granting equitable intervening rights because such a period may allow the infringer to recoup its investment" *Revolution Eyewear, Inc. v. Aspex Eyewear Inc.*, No. CV-02-1087-VAP-CWX, 2008 WL 6873811, at *8 (C.D. Cal. Jan. 3, 2008) (finding no equitable intervening rights where there was no proof of a specific amount of pre-

reissue investment and no evidence of profits to determine whether any recoup was necessary).

The reissue '384 Patent was issued June 17, 2008. Yet, Autodesk has been selling AutoCAD products with the accused functionality for more than a decade prior to that date. Damages for infringement for the '384 Patent can only be assessed from its issue date forward, even though it was pending in the patent office since January 2004 and even though it legally dates back to 1989. The evidence will show that Autodesk has profited by hundreds of millions of dollars on the accused AutoCAD products and their substantially similar predecessors over the decade during which no damages could be assessed. *Westvaco Corp. v. Int'l Paper Co.*, 991 F.2d 735, 743 (Fed. Cir. 1993) (affirming denial of equitable intervening rights and noting that even if the infringer made substantial preparation before the reissue, the court need only grant intervening rights to the extent it deems equitable).

## CONCLUSION

Autodesk again seeks the ultimate sanction of unenforceability of the '384 Patent as a remedy for its claim of equitable intervening rights. As explained above, the doctrine should not apply in this case as Autodesk would have infringed the original '393 Patent just as it infringes the '384 Patent. Equitable intervening rights is intended to apply to an innocent party who becomes an infringer of a reissue patent, and particularly one who relies on advice of counsel that it did not infringe the original patent in making preparations to sell its products. Autodesk does not fall into that category. Moreover, Autodesk will not have shown that it has failed to recoup any investment it made in preparing products prior to the reissue date in 2008, particular considering that it has been selling products with the patented features since at least the mid-1990's and no damages can be assessed for those sales. Even if it applied here, there is no evidence to support expanding the doctrine of equitable intervening rights to render the '384

Patent claims unenforceable.

Dated:  April 8, 2013          Respectfully submitted,

         /s/ Paul V. Storm
         Paul V. Storm
           State Bar No. 19325350
           pvstorm@gardere.com
         Sarah M. Paxson
           State Bar No. 24032826
           spaxson@gardere.com
         Gardere Wynne Sewell LLP
         1601 Elm Street, Suite 3000
         Dallas, TX  75201
         214.999.3000
         214.347.4667 (fax)

         Jonathan T. Suder
         State Bar No. 19463350
         Todd I. Blumenfeld
         State Bar No. 24067518
         FRIEDMAN, SUDER & COOKE
         Tindall Square Warehouse No. 1
         604 East 4th Street, Suite 200
         Fort Worth, TX 76102
         817.334.0400
         817.334.0401 (fax)
         jts@fsclaw.com
         blumenfeld@fsclaw.com

         **ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically and served on counsel of record via CM/ECF on April 8, 2013.

         /s/ Paul V. Storm
         Paul V. Storm