**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **AMERICAN IMAGING SERVICES, INC.,** § | | |
| § | | |
| **PLAINTIFF,** § | | |
| **VS.** § | **CIV. NO. 3:09-CV-733-M** | |
| § | | |
| **AUTODESK, INC.,** § | **JURY TRIAL DEMANDED** | |
| § | | |
| **DEFENDANT.** § | | |

## PLAINTIFF'S TRIAL BRIEF ON INEQUITABLE CONDUCT AND UNENFORCEABILITY

## **Table of Contents**

I.     AUTODESK'S ALLEGATIONS ........................................................................... 1

II.    LAW ON INEQUITABLE CONDUCT ............................................................... 2

  A.  Materiality ......................................................................................................... 2

  B.  Intent to Deceive ............................................................................................... 2

III.   THERE IS NO EVIDENCE OF MATERIALITY OR INTENT TO DECEIVE ............... 4

  The '384 Patent: ....................................................................................................... 4

    1(A).  Mr. Opincar's Allegedly Misleading Demonstration of SuperPaint was not material. 4

    1(B).  Mr. Opincar's demonstration of SuperPaint was not done with any intent to deceive the Patent Office. ................................................................................. 6

    2(A).  Mr. Opincar and his counsel's failure to disclose the Snider video demonstrating SuperPaint was not material. .............................................................. 7

    2(B).     Mr. Opincar and his counsel's failure to disclose the Snider video demonstrating SuperPaint was not done with any intent to deceive the Patent Office ................................. 7

    3(A).  AISI's submission of declarations to pre-date CAD Overlay 2.0 as prior art are true and are therefore not material. ............................................................... 8

    3(B).  AISI's declarations and remarks were not submitted with any intent to deceive the Patent Office. ................................................................................. 9

    4(A).  AISI's attorneys' allegedly misleading description of CAD Overlay 1.0 was not material. .................................................................................... 10

    4(B).  AISI's attorneys did not describe CAD Overlay 1.0 with any intent to deceive the Patent Office. ................................................................................. 11

  The '393 Patent: .................................................................................................... 11

    5(A).  There was no duty for AISI to disclose its May 1988 trade show demonstration of its LunaLink software or its offers to sell LunaLink and LunaEdit before the critical date...... 11

    5(B).  Neither Mr. Opincar nor his counsel Mr. Griggs failed to disclose information about LunaLink or LunaEdit with an intent to deceive the Patent Office. ..................................... 13

    6(A).  There will be no evidence that CAD Overlay 1.0 was material to the '393 Patent.... 14

    6(B).  Neither Mr. Opincar nor Mr. Griggs withheld CAD Overlay 1.0 from the Patent Office with an intent to deceive. ............................................................ 14

IV.     THE '384 PATENT SHOULD NOT BE HELD UNENFORCEABLE ........................... 15

TABLE OF AUTHORITIES

**Page(s)**

CASES

*1st Media LLC v. Electronic Arts, Inc.*,
   694 F.2d 1367 (Fed. Cir. 2012)................................................................15

*Allen Eng'g Corp. v. Bartell Indus., Inc.*,
   299 F.3d 1336 (Fed. Cir. 2002).................................................................8

*Allied Colloids, Inc. v. Am. Cynamid Co.*,
   64 F.3d 1570 (Fed. Cir. 1995)...................................................................6

*Burlington Indus., Inc. v. Dayco Corp.*,
   849 F.2d 1418 (Fed. Cir. 1988).................................................................1

*Carbide Blast Joints, Inc. v. Rickert Precision Indus., Inc.*,
   No. 95-1040, 95-1059, 1995 WL 710871 (Fed. Cir. Dec. 4, 1995) ........11

*Cohesive Techs., Inc. v. Waters Corp.*,
   543 F.3d 1351 (Fed. Cir. 2008).................................................................4

*In Re Eickmeyer*,
   602 F.2d 974 (C.C.P.A. 1979) ..................................................................8

*Eisai Co., Ltd. v. Dr. Reddy's Labs, Ltd.*,
   533 F.3d 1353 (Fed. Cir. 2008)...............................................................10

*Evans Cooling Sys., Inc. v. Gen. Motors Corp.*,
   125 F.3d 1448 (Fed. Cir. 1997)...............................................................12

*Flex-Rest LLC v. Steelcase, Inc.*,
   455 F.3d 1351 (Fed. Cir. 2006).................................................................7

*Hebert v. Lisle*,
   99 F.3d 1109 (Fed. Cir. 1996)..................................................................2

*Insultherm, Inc. v. Tank Insulation, Int'l, Inc.*,
   No. 94-1378, 1995 WL 453400 (Fed. Cir. Apr. 25, 1995) .....................13

*Kingsdown Med. Consultants, Ltd. v. Hollister Inc.*,
   863 F.2d 867 (Fed. Cir. 1988) (en banc).............................................3, 10

*Larson Mfg. Co. v. Aluminart Prods. Ltd.*,
   559 F.3d 1317 (Fed. Cir. 2009).............................................................4, 14

*Liquid Dynamics Corp. v. Vaughan Co.*,
   449 F.3d 1209 (Fed. Cir. 2006).................................................................3

*M. Eagles Tool Warehouse, Inc. v. Fisher Tooling Co.*,
  439 F.3d 1335 (Fed. Cir. 2006).......................................................................14

*Mahurkar v. C.R. Bard, Inc.*,
  79 F.3d 1572 (Fed. Cir. 1996).........................................................................9

*Manville Sales Corp. v. Paramount Sys., Inc.*,
  917 F.2d 544 (Fed. Cir. 1990).........................................................................2

*Micro Chem., Inc. v. Great Plains Chem. Co., Inc.*,
  103 F.3d 1538 (Fed. Cir. 1997).......................................................................12

*Northern Telecom, Inc. v. Datapoint Corp.*,
  908 F.2d 931 (Fed. Cir. 1990).........................................................................4

*Pfaff v. Wells Elecs., Inc.*,
  525 U.S. 55 (1998)..........................................................................................12

*Rentrop v. Spectranetics Corp.*,
  550 F.3d 1112 (Fed. Cir. 2008).......................................................................16

*Scanner Techs. Corp. v. ICOS Vision Sys. Corp N.V.*,
  528 F.3d 1365 (Fed. Cir. 2008).......................................................................13

*Seal-Flex, Inc. v. Athletic Track and Court Constr.*,
  98 F.3d 1318 (Fed. Cir. 1996).........................................................................12

*Sensonics, Inc. v. Aerosonics Corp.*,
  81 F.3d 1566 (Fed. Cir. 1996).........................................................................13

*Star Scientific Inc. v. R.J. Reynolds Tobacco Co.*,
  537 F.3d 1357 (Fed. Cir. 2008).............................................................2, 3, 4, 15

*Therasense, Inc. v. Becton, Dickinson & Co.*,
  649 F.3d 1276 (Fed. Cir. 2011) (en banc)......................................2, 3, 4, 8, 14, 15

*Vita-Mix Corp. v. Basic Holding, Inc.*,
  581 F.3d 1317 (Fed. Cir. 2009).......................................................................3

## STATUTES

35 U.S.C. § 102(b) ..........................................................................................12

"[T]he habit of charging inequitable conduct in almost every major patent case has become an absolute plague." *Burlington Indus., Inc. v. Dayco Corp.*, 849 F.2d 1418, 1422 (Fed. Cir. 1988).   This case is no exception.   Defendant Autodesk claims that William Opincar, Plaintiff AISI's President and one of the named inventors on both original U.S. Patent No. 5,353,393 and Reissued U.S. Patent No. RE40,384, and AISI's patent prosecution counsel withheld material references and embarked on a series of misrepresentations with the specific intent to deceive the Patent Office into issuing both patents.   There is no evidence to support Autodesk's assertions and certainly no evidence sufficient for Autodesk to meet its burden of proving inequitable conduct by clear and convincing evidence.

## I.   AUTODESK'S ALLEGATIONS

Based on Autodesk's Expert Report of Mark E. Nusbaum and the 30(b)(6) testimony of AISI, AISI expects Autodesk to attempt to prove inequitable conduct based on the following six alleged acts/omissions:

In the '384 Patent Reissue Prosecution:

1.  Mr. Opincar's allegedly misleading demonstration of SuperPaint

2.  Failure to disclose a video declaration of Bill Snider demonstrating SuperPaint from the *Intergraph* patent litigation involving the '393 Patent

3.  Submitting allegedly misleading declarations to remove CAD Overlay 2.0 as prior art

4.  Attorney argument allegedly inaccurately describing the functionality of a prior art version of CAD Overlay

In the original '393 Patent Prosecution:

5.  Failure to disclose AISI's May 1988 trade show demonstration of its LunaLink software, including information about LunaLink's operation, stage of development, and marketing and AISI's offers to sell LunaLink and LunaEdit before the critical date

6.  Failure to disclose CAD Overlay as prior art

## II.   LAW ON INEQUITABLE CONDUCT

"To prevail on the defense of inequitable conduct, the accused infringer must prove that the applicant misrepresented or omitted material information with the specific intent to deceive the PTO." *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1287 (Fed. Cir. 2011) (en banc). "Intent and materiality are separate requirements." *Id.* at 1290.   A finding of materiality, no matter how material the Court finds the non-disclosed information or misrepresentation to be, is irrelevant to the Court's determination of intent to deceive. *Id.* ("[A] court must weigh the evidence of intent to deceive independent of its analysis of materiality."); *Star Scientific Inc. v. R.J. Reynolds Tobacco Co*., 537 F.3d 1357, 1366 (Fed. Cir. 2008) ("[M]ateriality does not presume intent, which is a separate and essential component of inequitable conduct."); *see also Manville Sales Corp. v. Paramount Sys., Inc*., 917 F.2d 544, 552 (Fed. Cir. 1990) (affirming finding of no intent to deceive despite argument that undisclosed information was known to the inventor and was highly material).

### A.  Materiality

The standard to establish inequitable conduct is "but-for" materiality. *Therasense*, 649 F.3d at 1291. "But-for" materiality means that Autodesk must prove by a preponderance of evidence that the Patent Office would not have allowed a claim if it had been aware of the withheld reference. *Id.*   Alternately, if Autodesk proves "affirmative acts of egregious misconduct, such as the filing of an unmistakably false affidavit," that misconduct is material. *Id.* at 1292.

### B.  Intent to Deceive

"Intent to deceive cannot be inferred solely from the fact that information was not disclosed; there must be a factual basis for a finding of deceptive intent." *Hebert v. Lisle*, 99 F.3d 1109, 1116 (Fed. Cir. 1996) (reversing judgment of unenforceability finding no evidence of

materiality or intent to deceive).  "A district court should not use a "sliding scale," where a weak showing of intent may be found sufficient based on a strong showing of materiality, and vice versa." *Therasense*, 649 F.3d at 1290.  "Proving that the applicant knew of a reference, should have known of its materiality, and decided not to submit it to the PTO does not prove specific intent to deceive. *Id*. citing *Star Scientific,* 537 F.3d at 1366 ("the fact that information later found material was not disclosed cannot, by itself, satisfy the deceptive intent element of inequitable conduct").

The law has long been clear that mistake, negligence, or even gross negligence do not support an inference of intent to deceive. *Kingsdown Med. Consultants, Ltd. v. Hollister Inc*., 863 F.2d 867, 876 (Fed. Cir. 1988) (en banc).  In *Kingsdown*, the Federal Circuit clarified that the intent element of inequitable conduct cannot be satisfied by conduct amounting to gross negligence:

> We adopt the view that a finding that particular conduct amounts to "gross negligence" does not of itself justify an inference of intent to deceive; the involved conduct, viewed in light of all the evidence, including evidence indicative of good faith, must indicate sufficient culpability to require a finding of intent to deceive.

Intent to deceive "is a subjective inquiry into whether the inventor knew the information was material and chose not to disclose it." *Liquid Dynamics Corp. v. Vaughan Co*., 449 F.3d 1209, 1226-27 (Fed. Cir. 2006) (affirming finding of no intent to deceive where trial court relied on testimony that inventor did not believe prior inventions were material because the prior inventions were very different configurations from his invention, even though the Federal Circuit also found the inventor was incorrect in his belief about materiality); *see also Vita-Mix Corp. v. Basic Holding, Inc*., 581 F.3d 1317, 1332 (Fed. Cir. 2009) (affirming finding of no intent to deceive based on inventor testimony that regardless of whether a statement he made to the PTO

was actually false, he believed it was true when he made it); *Cohesive Techs., Inc. v. Waters Corp.*, 543 F.3d 1351, 1365-66 (Fed. Cir. 2008) (affirming finding of no intent to deceive where prosecuting attorney did not believe the undisclosed information was material and plaintiffs relied on him).  There is no objective component to this inquiry; this is not a "reasonable person" standard. *Northern Telecom, Inc. v. Datapoint Corp*., 908 F.2d 931, 939 (Fed. Cir. 1990) (observing that the factual determination of intent to deceive is subjective in nature, reversing the district court holding of inequitable conduct, and finding no intent to deceive even if inventor's statement to the PTO was in error or negligent).

Because direct evidence of deceptive intent is rare, a district court may infer intent from indirect and circumstantial evidence.  *Therasense*, 649 F.3d at 1290.  If intent to deceive is to be inferred from any evidence, including circumstantial evidence, that evidence must still be clear and convincing. *Star Scientific*, 537 F.3d at 1366. An inference of intent to deceive must be the "single most reasonable inference able to be drawn from the evidence." *Larson Mfg. Co. v. Aluminart Prods. Ltd*., 559 F.3d 1317, 1326 (Fed. Cir. 2009).  "[W]hen there are multiple reasonable inferences that may be drawn, intent to deceive cannot be found."  *Therasense*, 649 F.3d at 1290-1291.  A patentee need not offer any good faith explanation for its actions unless the accused infringer first proves a threshold level of intent to deceive by clear and convincing evidence.  *Star*, 537 F.3d at 1368.

### III.    THERE IS NO EVIDENCE OF MATERIALITY OR INTENT TO DECEIVE

**The '384 Patent:**

1(A).    Mr. Opincar's Allegedly Misleading Demonstration of SuperPaint was not material.

Autodesk's expert Mr. Nusbaum is expected to accuse Mr. Opincar of misleadingly demonstrating the prior art SuperPaint program to omit some of its functionality.  Mr. Nusbaum

will testify that but-for Mr. Opincar's incomplete demonstration, claim 14 of the '384 Patent would not have been allowed.  Mr. Nusbaum will testify that if the omitted functions had been demonstrated to the Examiner, it would have shown that SuperPaint maintained raster images and vector images in registration using a vector coordinate system, as required by claims 1 and 14.

AISI will present at least the following contrary evidence.  First, SuperPaint does not use a vector coordinate system at all and therefore could not maintain images in registration using a vector coordinate system.  Thus, the evidence will show that the demonstration accurately reflected the relevant functionality of SuperPaint.  Second, the evidence will show that the Examiner was asked by Mr. Opincar and his lawyers if he wanted to see any other functionality during the SuperPaint demonstration, and the Examiner chose not to.  The evidence will show that Mr. Opincar would have demonstrated other functionality if the Examiner had requested it.  The evidence will also show that Mr. Opincar would have let the Examiner perform his own testing of SuperPaint if he had indicated a desire to do so.  Third, the evidence will show that Mr. Opincar and his attorneys disclosed manuals from the makers of SuperPaint and other third party related documents describing SuperPaint's functionality to the Patent Office. The evidence will further show that the Examiner reviewed the SuperPaint documents prior to issuing the '384 Patent claims.  Fifth, the evidence will also show that AISI submitted the summary judgment briefing from the Intergraph case discussing SuperPaint, the district court opinion invalidating all of the original claims in view of SuperPaint, and the Federal Circuit opinion affirming the lower court as to most of the claims.  Sixth, the evidence will further show that Autodesk presented the SuperPaint manual as a prior art reference and argued that the Asserted Claims 14 and 15 should not have been allowed in view of that manual in combination with another reference during the

reexamination of the '384 Patent that Autodesk initiated during this case.  The Patent Office reviewed Autodesk's submission and arguments, disagreed with its characterizations and ultimately affirmed Asserted Claims 14 and 15 as patentable over SuperPaint.

The evidence will therefore show that Mr. Opincar's actions were not misleading and the Examiner had considerable independent information to allow him to assess the functionality of SuperPaint.  There is no support for a conclusion that but-for Mr. Opincar's demonstration, the '384 Patent claims would not have issued.  Likewise, there is no evidence of any affirmative egregious misconduct in the demonstration by Mr. Opincar.

> 1(B).   Mr. Opincar's demonstration of SuperPaint was not done with any intent to deceive the Patent Office.

There is no evidence that Mr. Opincar believed that he was doing anything misleading in his demonstration of SuperPaint.  To the contrary, the evidence will show that Mr. Opincar had every reason to accurately demonstrate SuperPaint, because most claims of the original '393 Patent had been invalidated in view of it.  The evidence will show that Mr. Opincar explained in his declaration in support of the reissue that his original claims were too broad in view of SuperPaint and that he had intended to narrow those claims.  Thus, Mr. Opincar would have wanted to accurately demonstrate SuperPaint in order to obtain new patent claims that would be valid over SuperPaint. Further, the evidence will show that several of Mr. Opincar's lawyers were present at the SuperPaint demonstration and that none of them believed that his demonstration was misleading.  The volume of information submitted to the Patent Office regarding SuperPaint is also evidence that Mr. Opincar was not intentionally trying to hide anything about SuperPaint from the Examiner. "It is not inequitable conduct to omit telling the patent examiner information that the applicant in good faith believes is not material to patentability." *Allied Colloids, Inc. v. Am. Cynamid Co.*, 64 F.3d 1570, 1578 (Fed. Cir. 1995)

(vacating judgment of unenforceability).

    2(A).   Mr. Opincar and his counsel's failure to disclose the Snider video demonstrating SuperPaint was not material.

Autodesk's expert Mr. Nusbaum will also testify that if AISI had submitted a video declaration of SuperPaint creator Bill Snider demonstrating SuperPaint, claim 14 of the '384 Patent would not have been allowed. Mr. Nusbaum will testify that the video more fully demonstrated the functionality of SuperPaint than Mr. Opincar demonstrated.

However, the evidence will show the Snider video is not prior art, as it was created during the Intergraph litigation after the original '393 Patent issued. Thus, there is no basis for requiring its disclosure. The evidence will also show that Mr. Snider's video declaration would not change the fact that SuperPaint does not use a vector coordinate system as required by claim 14. The evidence will further show that a written declaration from Mr. Snider in the Intergraph case explaining SuperPaint was submitted to the Patent Office as well as many other documents describing its functionality. Thus, the evidence will show that Mr. Snider's video declaration was cumulative at best and would not have changed the Examiner's opinion that the '384 Patent claims should issue over SuperPaint.

    2(B).   Mr. Opincar and his counsel's failure to disclose the Snider video demonstrating SuperPaint was not done with any intent to deceive the Patent Office

There is no evidence that Mr. Opincar or his counsel failed to disclose the Snider video with any intent to deceive the Patent Office. The evidence will show that many documents, including Mr. Snider's written declaration were submitted to the Patent Office. There will no evidence that anyone involved in the '384 Patent prosecution intentionally withheld the Snider video from the Patent Office with an intent to deceive. *Flex-Rest LLC v. Steelcase, Inc.*, 455 F.3d 1351, 1363-64 (Fed. Cir. 2006) (affirming trial court finding of no intent to deceive based

on inventor testimony that he believed undisclosed information was cumulative).   Moreover, particularly with respect to Mr. Opincar, the evidence will demonstrate that he relied on his lawyers to provide everything to the Patent Office that was relevant from the Intergraph litigation.  *Allen Eng'g Corp. v. Bartell Indus., Inc.,* 299 F.3d 1336, 1351-52 (Fed. Cir. 2002) (rejecting defendant's essential argument that the reference was so material that its nondisclosure justified an inference of intent and affirming finding of no intent to deceive as "materiality does not presume intent").

      3(A).   AISI's submission of declarations to pre-date CAD Overlay 2.0 as prior art are true and are therefore not material.

Mr. Nusbaum is expected to testify that Rule 131 declarations submitted by the inventors of the '384 Patent in conjunction with the attorney remarks about the content of those declarations was misleading to the Patent Office.  Even if that is true (which the evidence will show it is not), Mr. Nusbaum has not provided any testimony to satisfy the *Therasense* standard of materiality that the '384 Patent claims would not have issued but-for the allegedly misleading declarations.  Thus, Autodesk's inequitable conduct allegation based on this theory should be denied.

Further, the evidence will show that the declarations are true.  Rule 131 declarations are used during patent prosecution to allow an inventor to show that his invention was conceived of, and thereafter diligently reduced to practice, on a date before the date of a prior art reference.  37 C.F.R. §1.131; *In Re Eickmeyer*, 602 F.2d 974, 978 (C.C.P.A. 1979) ("The purpose of filing a 131 affidavit is to overcome the effective date of a reference cited in support of a rejection.").  The practice is also called "swearing behind" a reference.  In this case, the evidence will show that the AISI inventors submitted declarations in May 2006 explaining that they conceived of the "Invention" prior to August 8, 1988, which is the date of potential prior art CAD Overlay 2.0.

The inventors declared that "[a]fter conception of the Invention, we were diligent in attempting to reduce the Invention to practice." They also declared that "[p]rior to August 8, 1988, AISI began shipping copies of LunaLink, a computer program embodying some of the features of the Invention." The evidence will show that each of these statements is true. Moreover, it is unclear whether Mr. Nusbaum will testify that he believes that these statements are false.

The evidence will further show that AISI's attorney Mr. Patti submitted remarks to the Patent Office along with the declarations. His remarks stated that the declarations were submitted "to establish that Applicant conceived of and reduced to practice the present invention prior to CAD Overlay's publication date of August 8, 1988." Mr. Patti will testify that, to the extent that his remarks were inaccurate, it was due to his unintentional mistake in summarizing the declarations. The evidence may show that the Invention may not have been reduced to practice prior to August 8, 1988, but that it was reduced to practice at least around that time. However, the evidence will also show that AISI was diligent in attempting to reduce it to practice, as stated in the declarations. Diligence in reduction to practice is sufficient to pre-date a reference even if the reduction to practice is not complete before the publication date of the prior art. *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1578 (Fed. Cir. 1996). Thus, any mistake by Mr. Patti in his remarks was not material, considering the Patent Office had the actual declarations, which are true, and also knows the law in this area.

3(B).   AISI's declarations and remarks were not submitted with any intent to deceive the Patent Office.

The evidence will show that the Rule 131 declarations submitted were true. Thus, there could not be any intent to deceive in submitting them. The evidence will also show that Mr. Patti simply made a mistake in his summary of those declarations in his remarks and that he submitted the declarations themselves contemporaneously with his remarks. A mistake in an attorney

argument is not evidence of intent to deceive. *Kingsdown*, 863 F.2d at 876 (holding that even a finding of gross negligence does not justify an inference of intent to deceive); see also *Eisai Co., Ltd. v. Dr. Reddy's Labs, Ltd.*, 533 F.3d 1353, 1360-61 (Fed. Cir. 2008) (affirming trial court finding of no evidence of intent to deceive based on inventor testimony).

> 4(A).   AISI's attorneys' allegedly misleading description of CAD Overlay 1.0 was not material.

Mr. Nusbaum is expected to testify that AISI's attorney argument about the CAD Overlay 1.0 reference during the '384 Patent reissue prosecution was misleading and that claim 14 of the '384 Patent would not have issued but-for AISI's mischaracterization.[1]

The evidence will show that AISI's attorneys did not mischaracterize CAD Overlay 1.0. The evidence will also show that AISI's attorneys submitted the manuals and other documents related to CAD Overlay to the Examiner, and he considered them. The evidence will further show that Autodesk submitted a request for reexamination of the '384 Patent during this case, presenting the CAD Overlay 1.0 manual as a prior art reference and arguing that the Asserted Claims 14, 15, 108, and 114 should not have been allowed in view of that manual in combination with an AutoCAD reference manual. The Patent Office accepted Autodesk's request for reexamination, found the CAD Overlay 1.0 manual's disclosure to be cumulative in view of two other references, extensively considered those references and additional references, and Autodesk's arguments about all of them, and affirmed all of the claims as patentable over CAD Overlay and the other references. Thus, all of the evidence will show that the Patent Office has considered CAD Overlay multiple times and has both issued and confirmed the Asserted Claims

---

[1] It is unclear whether Mr. Nusbaum will also testify that AISI did not disclose information from the Intergraph litigation regarding CAD Overlay as his report indicates both that he found that a declaration and press release were undisclosed but also notes that they were actually disclosed. If this issue is raised, the evidence will show that the documents he references were disclosed.

of the '384 Patent over it.  It is impossible for Autodesk to prove that but-for AISI's argument in 2004, the '384 Patent claims would not have issued.

      4(B).   AISI's attorneys did not describe CAD Overlay 1.0 with any intent to deceive the Patent Office.

There will be no evidence that AISI's attorneys mischaracterized CAD Overlay 1.0, much less that they did so with any intent to deceive.  The evidence will show that the Patent Office has repeatedly agreed with AISI regarding the scope of the disclosure of CAD Overlay after its own analysis of the CAD Overlay manual.  To the extent that any mischaracterization occurred, there will not be any evidence that the attorney making the remark believed that it was a misstatement.  Thus, there will be no evidence of that person's intent to deceive the Patent Office. *Carbide Blast Joints, Inc. v. Rickert Precision Indus., Inc*., No. 95-1040, 95-1059, 1995 WL 710871 at *4-5 (Fed. Cir. Dec. 4, 1995) (reversing lower court finding of intent to deceive and noting that at best the evidence indicated simple negligence or erroneous judgment and "the burden is not on the patentee to prove good faith during the prosecution, but on the alleged infringer to prove deceptive intent").

**<u>The '393 Patent:</u>**

      5(A).   There was no duty for AISI to disclose its May 1988 trade show demonstration of its LunaLink software or its offers to sell LunaLink and LunaEdit before the critical date.

In order to prove that AISI committed inequitable conduct, Autodesk must show that AISI had a duty to disclose a particular reference and failed to do so.  The law of disclosure requirements during the time of the prosecution of the original '393 Patent was different than it is now and different than what it was during the time of the prosecution of the reissue '384 Patent. A patent applicant has long been required to disclose information known to be "material to patentability" (37 C.F.R. § 1.56), but the meaning of materiality has changed over time, and thus

the scope of the disclosure requirement has also changed. The law regarding the on-sale bar changed significantly with the Supreme Court's *Pfaff* decision, *Pfaff v. Wells Elecs., Inc.*, 525 U.S. 55 (1998). In *Pfaff*, the Supreme Court clarified the standard for determining satisfaction of the on-sale bar of 35 U.S.C. § 102(b), which provided at the time that "[a] person is not entitled to a patent if the invention was ... on sale in this country, more than one year prior to the date of the application for patent in the United States." 35 U.S.C. § 102(b) (1994).[2]

Pre-*Pfaff*, "[i]n order for a patent to be invalid under [section 102(b)], the claimed invention asserted to have been on sale must [have been] substantially completed with reason to expect it would work for its intended purpose…" *Evans Cooling Sys., Inc. v. Gen. Motors Corp*., 125 F.3d 1448, 1450 (Fed. Cir. 1997). Thus, pre-*Pfaff*, a patent applicant offering a product for sale that was not actually completed at the time of the offer could reasonably believe that it did not need to disclose that offer because there was no complete product. Many courts had held that an incomplete product offering would not have triggered the 102(b) on-sale bar under the law from 1989-1998. *See, e.g.*, *Micro Chem., Inc. v. Great Plains Chem. Co., Inc.*, 103 F.3d 1538, 1544-45 (Fed. Cir. 1997) (finding no on-sale bar where offer to sell was for a machine where only a prototype was developed and only sketches for additional parts of the invention were done); *Seal-Flex, Inc. v. Athletic Track and Court Constr*., 98 F.3d 1318, (Fed. Cir. 1996) (reversing summary judgment on on-sale bar and collecting cases where courts found that contacts with potential customers before an invention was completed did not start the on-sale bar period).

---

[2] The Supreme Court held that the on-sale bar applies when, more than one year prior to the filing date, (1) the invention was the subject of a commercial offer for sale, and 2) the invention was "ready for patenting." *Id.* at 67-68. The "ready for patenting" condition may be satisfied "by proof of reduction to practice before the critical date; or by proof that prior to the critical date the inventor had prepared drawings or other descriptions of the invention that were sufficiently specific to enable a person skilled in the art to practice the invention." *Id.*

---

Mr. Opincar will testify that his attorneys had all of the information that he had on the timing of the development of LunaLink and LunaEdit during the prosecution of the '393 Patent, which concluded in 1994.  Mr. Opincar will testify that the original patent application was filed on June 14, 1989, because the first time that AISI shipped the LunaLink product was June 15, 1988 and he understood that was the date to be concerned about for an on-sale bar.  *Cf. Sensonics, Inc. v. Aerosonics Corp.*, 81 F.3d 1566, 1570-71 (Fed. Cir. 1996) (affirming finding of no intent to deceive based on testimony of inventor that he did not think his own prior art patent was relevant to his current invention and fact that defendant's counsel also did not initially notice the relevance of prior art).

> 5(B).  Neither Mr. Opincar nor his counsel Mr. Griggs failed to disclose information about LunaLink or LunaEdit with an intent to deceive the Patent Office.

Even if the Court finds that information about LunaLink and LunaEdit was material under the law in 1989-1994, there is no evidence of any intent to deceive by either Mr. Opincar or Mr. Griggs.  Mr. Opincar gave the information about AISI's commercial products to his lawyer.  There is nothing more expected from an inventor.  *Insultherm, Inc. v. Tank Insulation, Int'l, Inc.*, No. 94-1378, 1995 WL 453400, at *2-4 (Fed. Cir. Apr. 25, 1995) (reversing lower court finding of intent to deceive noting that at most the record showed gross negligence by patent attorney where inventor testified that he provided his patent attorney with all prior art and patent attorney testified he did not disclose one piece because he thought it differed from the invention).  It was Mr. Griggs' decision whether to disclose that information to the Patent Office.

Autodesk will not be able to prove that Mr. Griggs had any intent to deceive the Patent Office in not disclosing the information about LunaLink and LunaEdit.  It is entirely possible that Mr. Griggs' view of the law was that such information did not need to be disclosed.  *Scanner Techs. Corp. v. ICOS Vision Sys. Corp N.V.*, 528 F.3d 1365, 1376 (Fed. Cir. 2008) ("Whenever

evidence proffered to show either materiality or intent is susceptible of multiple reasonable inferences, a district court clearly errs in overlooking one inference in favor of another equally reasonable inference.").  An inference of intent to deceive must be the "single most reasonable inference able to be drawn from the evidence." *Larson Mfg*., 559 F.3d at 1340 (citation omitted). Unfortunately, Mr. Griggs is deceased, so there will be no evidence of his subjective intent regarding to any aspect of the '393 Patent prosecution.  As such, Autodesk cannot meet its burden on this element.  *M. Eagles Tool Warehouse, Inc. v. Fisher Tooling Co*., 439 F.3d 1335, 1342-43 (Fed. Cir. 2006) (reversing finding of intent to deceive that essentially amounted to strict liability for nondisclosure noting that a good faith explanation was unavailable because the inventor had died and the lack of a good faith explanation for nondisclosure is not sufficient to constitute clear and convincing evidence of intent).

6(A).   There will be no evidence that CAD Overlay 1.0 was material to the '393 Patent.

Based on questions asked during the 30(b)(6) deposition of AISI, AISI expects Autodesk to raise the non-disclosure of CAD Overlay 1.0 during the original prosecution as a basis for inequitable conduct.  However, Autodesk has no expert reports or other testimony regarding whether and how CAD Overlay would have been but-for material in the '393 Patent prosecution. Under *Therasense*, Autodesk must prove that the '393 Patent claims would not have issued if CAD Overlay 1.0 had been disclosed.  *Therasense*, 649 F.3d at 1291.  With no testimony disclosed on this issue, Autodesk cannot meet its burden.

6(B).   Neither Mr. Opincar nor Mr. Griggs withheld CAD Overlay 1.0 from the Patent Office with an intent to deceive.

Even if Autodesk did have evidence of the materiality of CAD Overlay, it cannot prove intent to deceive by anyone in not providing CAD Overlay to the Patent Office.  The evidence will show that Mr. Opincar did not believe that CAD Overlay was relevant to the invention of the

'393 Patent and that he shared that belief with his counsel Mr. Griggs. The evidence will show that Mr. Opincar provided Mr. Griggs with information about CAD Overlay in full satisfaction of his duty to disclose. Thus, there is no basis for a finding that Mr. Opincar intended to deceive the Patent Office. Likewise, there will be no evidence that Mr. Griggs intended to deceive anyone. There is no evidence as to Mr. Griggs' subjective belief about or knowledge of any materiality of CAD Overlay and even if there was, "[k]nowledge of the reference and knowledge of materiality alone are insufficient after *Therasense* to show an intent to deceive." *1st Media LLC v. Electronic Arts, Inc.*, 694 F.2d 1367, 1375 (Fed. Cir. 2012) (holding that there was no evidence of a deliberate decision by the patentee or his lawyer to withhold a reference and noting that it was clear error for the court to have relied on the lawyer's inability to offer a good faith explanation as a basis to infer a deliberate decision to withhold ). Autodesk will not be able to prove intent to deceive — a required element for inequitable conduct.

### IV.   THE '384 PATENT SHOULD NOT BE HELD UNENFORCEABLE

As detailed above, Autodesk will be unable to prove both elements of inequitable conduct (materiality and intent to deceive) for any of its theories. However, even if the Court were to find materiality and intent to deceive under any scenario, a finding of inequitable conduct is still not automatic. The Court must balance the substantive evidence underlying those factors and all equities to determine whether the '384 Patent should be rendered unenforceable. *Star Scientific*, 537 F.3d at 1367. The Court weighs the substance of all of the underlying facts found, including the level of materiality of the actions found material, the level of intent found, and other equitable considerations, to determine whether it is fair to punish Plaintiff with the ultimate penalty of unenforceability. *Id.* The equities in this case weigh heavily against unenforceability.

With respect to any Autodesk theory on inequitable conduct of the original '393 Patent, it would be unfair to hold the '384 Patent unenforceable based on any of that conduct. Each of the

references that Autodesk points to as undisclosed and material to the '393 Patent (LunaLink, LunaEdit, and CAD Overlay 1.0) were disclosed during the prosecution of the '384 Patent. Thus, the Patent Office has already found that the '384 Patent claims are patentable even after considering those references. AISI is not trying to enforce the '393 Patent and any errors in its prosecution (which AISI denies) have been corrected during the prosecution of the patent that it is trying to enforce — the '384 Patent. There is no justification for punishing AISI for acts related to the original patent that have been ameliorated.

It would also be inequitable to hold the '384 Patent unenforceable based on activities during its prosecution. Autodesk does not assert that there was any prior art that AISI failed to disclose or intentionally withheld from the Patent Office. Autodesk's accusations center instead around the way in which AISI characterized certain references. The Patent Office had every opportunity, and indeed had the obligation to, examine the references actually provided and determine whether it agreed or disagreed with AISI's argument and description. The evidence shows that the Patent Office performed its duties during the reissue prosecution and again during the reexamination initiated by Autodesk during this case. Autodesk clearly disagrees with the Patent Office's ultimate determination that it agreed with AISI's view and issued the claims of the '384 Patent over the prior art. However, if the Patent Office failed in its evaluation in any way, it is not because AISI held information back from it or acted in bad faith. *Rentrop v. Spectranetics Corp.*, 550 F.3d 1112, 1120 (Fed. Cir. 2008) (affirming district court refusal to find patent unenforceable noting that low materiality and weak intent did not warrant unenforceability). As such, the '384 Patent should be enforced.

Dated:   April 8, 2013

Respectfully submitted,

/s/ Paul V. Storm
Paul V. Storm
  State Bar No. 19325350
  pvstorm@gardere.com
Sarah M. Paxson
  State Bar No. 24032826
  spaxson@gardere.com
Gardere Wynne Sewell LLP
1601 Elm Street, Suite 3000
Dallas, TX  75201
214.999.3000
214.347.4667 (fax)

Jonathan T. Suder
State Bar No. 19463350
Todd I. Blumenfeld
State Bar No. 24067518
FRIEDMAN, SUDER & COOKE
Tindall Square Warehouse No. 1
604 East 4th Street, Suite 200
Fort Worth, TX 76102
817.334.0400
817.334.0401 (fax)
jts@fsclaw.com
blumenfeld@fsclaw.com

**ATTORNEYS FOR PLAINTIFF**


<u>**CERTIFICATE OF SERVICE**</u>

The undersigned certifies that the foregoing document was filed electronically and served

on counsel of record via CM/ECF on April 8, 2013.


/s/ Paul V. Storm
Paul V. Storm

---