IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **AMERICAN IMAGING SERVICES, INC.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | No. 3:09-CV-733-M |
| | § | |
| **AUTODESK, INC.,** | § | |
| | § | |
| **Defendant.** | § | |

## MEMORANDUM OPINION AND ORDER

In this patent case, Defendant Autodesk, Inc. ("Autodesk") seeks summary judgment on the issue of infringement and on its affirmative defenses of invalidity and unenforceability. For the reasons stated herein, Autodesk's motion is **DENIED**.

## Background

Plaintiff American Imaging Services, Inc. ("American Imaging") is the owner by assignment of U.S. Patent No. RE 40,384E ("the '384 Patent"), entitled "Apparatus and Method for Manipulating Scanned Documents in a Computer Aided Design System." Succinctly stated, the '384 Patent covers a method for manipulating scanned documents, such as blueprints and design drawings, in a computer-aided design, or "CAD," software program and further aids in the display, scaling, editing, and reproduction of images created from the scanned documents. By this lawsuit, American Imaging alleges that certain software products manufactured and sold by Autodesk under the brand names "AutoCAD" and "AutoCAD Raster Design" infringe one or more claims of the '384 Patent. Autodesk denies any infringement and contends that the patent-in-suit is invalid and unenforceable for a variety of reasons. Autodesk has filed a motion for summary judgment on the

issue of noninfringement and its affirmative defenses of invalidity and unenforceability on various grounds. The issues have been fully briefed by the parties, and this matter is ripe for determination.

## Legal Standard

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The substantive law determines which facts are material. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In a patent case, an accused infringer who seeks summary judgment on the issue of noninfringement must show that "no reasonable jury could have found infringement on the undisputed facts or when all reasonable factual inferences are drawn in favor of the patentee." *Netword, LLC v. Centraal Corp.*, 242 F.3d 1347, 1353 (Fed. Cir. 2001). Similarly, an accused infringer who seeks summary judgment on an affirmative defense must establish "beyond peradventure" all of the essential elements of the defense to warrant judgment in its favor. *See Mannatech, Inc. v. Glycobiotics Int'l Inc.*, No. 3:06-CV-0471-BD, 2007 WL4386244, at *1 (N.D. Tex. Dec. 14, 2007) (citing cases). Once the movant meets its initial burden, the burden shifts to the nonmoving party to produce evidence or designate specific facts in the record showing the existence of a genuine issue for trial. *See id.* The parties may satisfy their respective burdens by tendering depositions, affidavits, and other competent evidence. *Id.* All evidence must be viewed in the light most favorable to the party opposing the motion. *Id.*

**Analysis**

<u>Noninfringement</u>

American Imaging contends that the accused AutoCAD products infringe Claims 14, 15, 108, and 114 of the '384 Patent,[1] literally and/or under the doctrine of equivalents. A patent is infringed if every limitation set forth in a claim is present in an accused product. *See Seal-Flex, Inc. v. Athletic Track and Court Constr.*, 172 F.3d 836, 842 (Fed. Cir.1999); *Jurgens v. McKasy*, 927 F.2d 1552, 1560 (Fed. Cir.). Where literal infringement is alleged, the patentee must prove that the accused product contains each limitation of an asserted claim. *See Bayer AG v. Elan Pharm. Research Corp.*, 212 F.3d 1241, 1247 (Fed. Cir. 2000). "If any claim limitation is absent from the accused [product], there is no literal infringement as a matter of law." *Id.*; *see also Moba, B.V. v. Diamond Automation, Inc.*, 325 F.3d 1306, 1313 (Fed. Cir. 2003). To prove infringement under the doctrine of equivalents, a patentee must demonstrate that the accused product contains each limitation of the claim or its equivalent. *See Amgen Inc. v. F. Hoffman-La Roche Ltd.*, 580 F.3d 1340, 1382 (Fed .Cir. 2009). "An element in the accused product is equivalent to a claim limitation if the differences between the two are 'insubstantial' to one of ordinary skill in the art." *Eagle Comtronics, Inc. v. Arrow Comm. Labs., Inc.*, 305 F.3d 1303, 1315 (Fed. Cir. 2002). The test for equivalence is whether "the accused product performs substantially the same function in substantially the same way with substantially the same result as each claim limitation of the patented product." *Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.*, 559 F.3d 1308, 1312 (Fed. Cir. 2009).

---

[1] American Imaging cancelled Claims 98 and 102 (to the extent dependent on Claim 98) in light of the United States Patent and Trademark Office's rejection of those claims on reexamination. Thus, there is no need to litigate whether the accused products infringe those claims. *See Gould v. Control Laser Corp.*, 705 F.2d 1340, 1342 (Fed. Cir. 1983) (cancellation of claims in reexamination eliminates need to try infringement issue).

The '384 Patent claims a program that enables an operator to convert manually-created engineering drawings into computer-readable form for use in CAD systems. Specifically, Claim 14 of the patent reads:

> In an electronic data processing system, a method of manipulating a scanned document, comprising the steps of:
>
> electronically displaying a first image representing the scanned document, said first image being a raster image comprised of a plurality of discrete picture elements defining at least one graphic element having a first shape;
>
> electronically displaying in response to user input commands, simultaneously with the display of said raster first image, a second image, said second image being a vector-based image comprised of a plurality of vectors having respective defined starting and ending points having predetermined positions relative to said picture elements and representing user-generated alterations to the first shape of said at least one graphic elements, said second image being displayed in a window having coordinates referenced to a vector origin, wherein said first image is maintained in registration with said second image using said coordinates; and
>
> merging said first and second images to provide an edited raster image wherein said at least one graphic element has a second shape differing from said first shape by at least one of said plurality of vectors displayed responsive to the user input commands.

Def. MSJ App, Exh. A at 17, col. 10, l. 66 - 18, col. 11, l. 22 (emphasis in original omitted).

Dependent Claim 15 reads:

> The method according to claim 14 further including the step of responding to a user input command indicating that only a selected portion of the scanned document is to be displayed by manipulating the raster first image so that only the selected portion of the document is displayed.

*Id.*, at 18 col. 11, ll. 23-27.

Claim 108 reads:

> A method for manipulating a scanned document in an electronic data processing system comprising:
>
> providing a first raster image comprised of a first set of discrete picture elements defining a first shape;
>
> electronically displaying said first raster image;
>
> electronically displaying a vector-based image in response to user input commands, wherein said vector based image representes [sic] user generated alterations to said raster image;
>
> wherein the vector-based image and the first raster image are displayed in a window having coordinates referenced to a vector origin;
>
> electronically maintaining said vector-based [image] in registration with said raster image using said coordinates;
>
> merging said vector-based image with said first raster image to generate a new raster file.

*Id*. at 24, col. 24, ll. 4-21.

Dependent Claim 114 reads:

> The method of claim 14 or 108, wherein the coordinates are referenced to the origin in real world units.

*Id.*, col. 24, ll. 48-49.

Autodesk argues that it is entitled to summary judgment of noninfringement on grounds that the accused products (1) do not meet the "vector-based image ... having predetermined positions relative to said picture elements" limitation required by claims 14, 15, and 114; (2) lack an "electronic data processing system" required by all of the asserted claims; and (3) do not meet the "maintained/maintaining in registration with" limitation required by all of the asserted claims. As evidence in support of its arguments, Autodesk relies on the expert report of Udo W. Pooch, Ph.D.,

which concludes that AutoCAD does not infringe any of the asserted claims of the '384 Patent, either literally or under the doctrine of equivalents. *See* Plf. MSJ App, Exh. KK at 1107-21, 1127-32. Also, with regard to the last basis for summary judgment, Autodesk contends that the vector-based image in the accused products moves independently of the raster image, such that the images are not "kept in sync with each other" as required by the Court's construction of the "maintained/maintaining in registration with" limitation. *See* Cl. Constr. Order, 11/6/12 (Doc. 177), Exh. A at 4. Autodesk points to evidence of American Imaging's demonstration to the United States Patent and Trademark Office ("USPTO") of how certain prior art, "SuperPaint" for Macintosh, does not meet the same limitation and, thus, does not anticipate the claims at issue. According to Autodesk, the accused products operate in the same manner as SuperPaint.

In response, American Imaging points to the expert report of J. Tipton Cole and his opinion that the accused AutoCAD products infringe each of the asserted claims of the '384 Patent.[2] *See* Plf. MSJ Resp. App., Exh. 3 at 1757-89. Among other things, Cole's report explains how the accused products allow a raster image and a vector-based image to be "maintained in registration" using a vector-coordinate system. *See id.* at 1761, 1766-69, 1781-82. Cole also differentiates the accused products from SuperPaint such that any demonstration regarding SuperPaint would not necessarily be instructive with regard to the accused AutoCAD products. *See id.*, Exh. 26 at 2111-14. Viewing all the evidence in the light most favorable to American Imaging, a reasonable juror could find that

---

[2] The admissibility of Cole's expert testimony is the subject of a separate motion to exclude filed by Autodesk. *See* Def. Mot. to Exclude (Doc. 197). A proper analysis under Fed. R. Civ. P. 702 and *Daubert* requires a complex factual inquiry that is difficult, if not impossible, to conduct on a truncated summary judgment record. *See Cortes-Irizarry v. Corporation Insular De Seguros*, 111 F.3d 184, 188 (1st Cir.1997) (recognizing that demands of *Daubert* analysis do not conform well to the summary judgment process and that "[a] trial setting normally will provide the best operating environment for the triage which *Daubert* demands"). Accordingly, the Court reserves Autodesk's objections to Cole's opinions for trial.

the accused products meet all of the limitations of the asserted claims of the '384 Patent, either literally or under the doctrine of equivalents. Thus, summary judgment is not appropriate at this time. *See Rembrandt Data Techs., LP v. AOL, LLC*, 641 F.3d 1331, 1343 (Fed. Cir. 2011) (finding expert testimony sufficient to raise a genuine issue of material fact). *See also Metro. Life Ins. Co. v. Bancorp Servs., LLC*, 527 F.3d 1330, 1338-39 (Fed. Cir. 2008) (conflict in expert testimony creates a genuine issue of material fact making summary judgment inappropriate); *Hilgraeve Corp. v. McAfee Assocs., Inc.*, 224 F.3d 1349, 1352 (Fed. Cir. 2000) (same).

Invalidity and Unenforceability

Autodesk also seeks summary judgment on its affirmative defenses of unenforceability due to laches and spoliation and invalidity on grounds of anticipation in light of certain prior art, the on-sale bar, recapture, and incorrect co-inventorship. To the extent Autodesk's arguments are not moot because the claims have been withdrawn or because the arguments relate to patent claims that have been cancelled,[3] the parties have agreed to a bench trial on the issues of inequitable conduct, laches, spoliation, and equitable intervening rights. The facts relevant to these equitable issues are closely intertwined with some of the critical facts related to Autodesk's arguments that certain claims are invalid due to the "on-sale" bar and recapture and that the '384 Patent is invalid due to incorrect co-inventorship. Accordingly, the Court finds it is in the interest of judicial economy to consider Autodesk's remaining arguments together on a full record at trial after the equitable issues have been

---

[3] Autodesk withdrew its request for summary judgment of invalidity as to claims 14, 15, and 114 based on certain prior art following the Court's issuance of its claim construction order. *See* Def. Supp. MSJ Br. (Doc. 179) at 1. Also, several of Autodesk's arguments regarding invalidity due to the on-sale bar and recapture are directed to Claims 98 and 102 (to the extent dependent on Claim 98), which American Imaging cancelled in light of the USPTO's rejection of those claims on reexamination.

resolved. The Court therefore denies Autodesk's request for summary judgment on its affirmative defenses of unenforceability and invalidity.

## CONCLUSION

Autodesk's Motion for Summary Judgment (Doc. 124) is **DENIED**.

**SO ORDERED**.

April 8, 2013.

*[signature]*
**BARBARA M. G. LYNN**
**UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF TEXAS**