IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| AMERICAN IMAGING SERVICES, INC., | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | Civil Action No. 3:09-CV-733-M |
| | § | |
| AUTODESK, INC., | § | JURY TRIAL DEMANDED |
| | § | |
| Defendant. | § | |

## NOTICE OF DECISION ON FOURTH PETITION FOR REEXAMINATION

On April 2, 2013, Defendant Autodesk, Inc. filed its Fourth Petition for Reexamination relating to U.S. Patent No. RE40,384 (the Patent-in-Suit in this case). On May 3, 2013, the United States Patent and Trademark Office denied Autodesk's request for ex parte reexamination. A copy of the Examiner's decision is attached hereto as Exhibit A.

Dated: May 8, 2013.                          Respectfully submitted,

/s/ Dave R. Gunter
   State Bar No. 24074334
Jonathan T. Suder
   State Bar No. 19463350
Todd I. Blumenfeld
   State Bar No. 24067518
FRIEDMAN, SUDER & COOKE
Tindall Square Warehouse No. 1
604 East 4th Street, Suite 200
Fort Worth, Texas 76102
(817) 334-0400
Fax (817) 334-0401
gunter@fsclaw.com
jts@fsclaw.com
blumenfeld@fsclaw.com

Paul V. Storm
  State Bar No. 19325350
Sarah M. Paxson
  State Bar No. 24032826
GARDERE WYNNE SEWELL LLP
1601 Elm Street, Suite 3000
Dallas, TX 75201
214.999.3000
214.347.4667 (fax)
pvstorm@gardere.com
spaxson@gardere.com

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

      I hereby certify that on the 8th day of May, 2013, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Northern District of Texas, Dallas Division, using the electronic case filing system of the court.  The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

                                /s/ Dave R. Gunter

## **EXHIBIT A**

(Attached)

| *Order Granting / Denying Request For Ex Parte Reexamination* | Control No. | Patent Under Reexamination |
|---|---|---|
| | 90/012,826 | RE40384 ET AL. |
| | Examiner | Art Unit |
| | JOSEPH R. POKRZYWA | 3992 |

*--The MAILING DATE of this communication appears on the cover sheet with the correspondence address--*

The request for *ex parte* reexamination filed <u>02 April 2013</u> has been considered and a determination has been made. An identification of the claims, the references relied upon, and the rationale supporting the determination are attached.

Attachments:  a)☐ PTO-892,   b)☒ PTO/SB/08,   c)☐ Other: _____

1. ☐   The request for *ex parte* reexamination is GRANTED.

       RESPONSE TIMES ARE SET AS FOLLOWS:

For Patent Owner's Statement (Optional):  TWO MONTHS  from the mailing date of this communication (37 CFR 1.530 (b)). **EXTENSIONS OF TIME ARE GOVERNED BY 37 CFR 1.550(c).**

For Requester's Reply (optional): TWO MONTHS from the **date of service** of any timely filed Patent Owner's Statement (37 CFR 1.535). **NO EXTENSION OF THIS TIME PERIOD IS PERMITTED.** If Patent Owner does not file a timely statement under 37 CFR 1.530(b), then no reply by requester is permitted.

2. ☒   The request for *ex parte* reexamination is DENIED.

This decision is not appealable (35 U.S.C. 303(c)).  Requester may seek review by petition to the Commissioner under 37 CFR 1.181 within ONE MONTH from the mailing date of this communication (37 CFR 1.515(c)). **EXTENSION OF TIME TO FILE SUCH A PETITION UNDER 37 CFR 1.181  ARE AVAILABLE ONLY BY PETITION TO SUSPEND OR WAIVE THE  REGULATIONS UNDER 37 CFR 1.183.**

In due course, a refund under 37 CFR 1.26 ( c ) will be made to requester:

    a) ☐  by Treasury check or,

    b) ☒  by credit to Deposit Account No. *02-2666*,  or

    c) ☐  by credit to a credit card account, unless otherwise notified (35 U.S.C. 303(c)).

| | | |
|---|---|---|
| | | |

cc: Requester ( if third party requester )

## DETAILED ACTION

### Response to Request for *ex parte* Reexamination

1.      Reexamination has been requested for claims 14, 15, 108, and 114 of United States

Patent Number RE40,384 to Opincar *et al.* (hereafter "the '384 Patent").

2.      Under 35 U.S.C. 304, the Office must determine whether "a substantial new question of

patentability" ("SNQ") affecting any claim of the patent has been raised.  If an SNQ is found, an

order for reexamination of the patent is granted.

3.      In this regard, MPEP 2217 states, in part:

> **Substantial new questions of patentability must be based on patents or printed**
> **publications. Other matters, such as public use or on sale, inventorship, 35 U.S.C.**
> **101, 35 U.S.C. 112, * > conduct <, etc., will not be considered when making the**
> **determination on the request and should not be presented in the request**. Further, a
> prior art patent or printed publication cannot be properly applied as a ground for
> reexamination if it is merely used as evidence of alleged prior public use or on sale,
> **insufficiency of disclosure**, etc. The prior art patent or printed publication must be
> applied directly to claims under 35 U.S.C. 103 and/or an appropriate portion of 35 U.S.C.
> 102 or relate to the application of other prior art patents or printed publications to claims
> on such grounds. [Emphasis added].

Application/Control Number: 90/012,826                                    Page 3
Art Unit: 3992

4.      Additionally, MPEP 2242 states:

>    If the prior art patents and printed publications raise a substantial question of patentability
>    of at least one claim of the patent, then a substantial new question of patentability is
>    present, **unless the same question of patentability has already been decided by** (A) a
>    final holding of invalidity, after all appeals, or (B) by the Office in a previous
>    examination or pending reexamination of the patent. A "previous examination" of the
>    patent is: (A) the original examination of the application which matured into the patent;
>    (B) the examination of the patent in a reissue application that has resulted in a reissue of
>    the patent; or (C) the **examination of the patent in an earlier pending or concluded
>    reexamination**. [Emphasis added].

5.      In this regard, <u>NO substantial new question of patentability</u> affecting claims 14, 15, 108,

and 114 of the '384 Patent is raised by the Third Party's request for *ex parte* reexamination.

6.      The '384 Patent was reissued on Jun. 17, 2008 with patented claims 1-114, whereby the

'384 Patent is a reissue of original U.S. Patent 5,353,393, issued on Oct. 4, 1994, filed as U.S.

Application 07/984,009 on Nov. 30, 1992.  Further, the 07/984,009 Application is a continuation

of application 07/782,876, filed on Oct. 17, 1991, which was abandoned, which is a continuation

of application 07/366,665, filed on Jun. 14, 1989, which was abandoned.

7.      The examiner notes that each claims 14, 15, 108, and 114 of the '384 Patent were subject

in the earlier reexamination proceeding of Control No. 90/011,073, whereby that proceeding

indicated that claims 14, 15, 108 and 114 were confirmed as patentable.

Application/Control Number: 90/012,826                                         Page 4
Art Unit: 3992

8.      Additionally, the '384 Patent has expired.  In this regard, MPEP 2258 states, in part:

> Original patent claims will be examined *only* on the basis of prior art patents or
> printed publications applied under the appropriate parts of 35 U.S.C. 102 and 103.
> See MPEP § 2217. During reexamination, claims are given the broadest
> reasonable interpretation consistent with the specification and limitations in the
> specification are not read into the claims *(In re Yamamoto,* 740 F.2d 1569, 222
> USPQ 934 (Fed. Cir. 1984)).  In a **reexamination proceeding involving claims
> of an expired patent**, claim construction pursuant to the principle set forth by the
> court in *Phillips v. AWH Corp.*, 415 F.3d 1303, 1316, 75 USPQ2d 1321, 1329
> (Fed. Cir. 2005) **(words of a claim "are generally given their ordinary and
> customary meaning" as understood by a person of ordinary skill in the art in
> question at the time of the invention) should be applied since the expired
> claim are not subject to amendment.** The statutory presumption of validity, 35
> U.S.C. 282, has no application in reexamination (*In re Etter*, 756 F.2d 852, 225
> USPQ 1 (Fed. Cir. 1985)). [Emphasis added].

### *Listing of Prior Art*

9.      In the current Request for Reexamination filed 4/2/2013, the Third Party Requester

alleges that the '384 Patent's claims 14, 15, 108, and 114 is unpatentable in light of the

following references:

      a.      "AutoSketch User Guide", June 6, 1988 (noted as the "AutoSketch Manual");

      b.      "Linking CAD to the Past!" one page brochure, which was distributed at Chicago

Trade Show on May 2-5, 1988 (noted as "Linking CAD to the Past"); and

      c.      "Canvas, Complete Graphics Environment for the Macintosh", Version 1.0, 1987

(noted as "Canvas Manual").


10.     The aforementioned cited reference of the AutoSketch Manual is not of record in the file

of the '384 Patent and is not cumulative to the art of record in the original file.  However, the

reference of the Canvas Manual was cited and utilized in a rejection within the previous

reexamination proceeding 90/011,073. Further, the Linking CAD to the Past brochure was cited

in the previous reissue proceeding, being listed in an Information Disclosure Statement, but the

reference was not specifically discussed or utilized in any rejection.


11.     Additionally, the Third Party Requester also submitted numerous Declarations and Court

documents with the Request for Reexamination.  But as noted above, MPEP 2217 is clear that a

substantial new question of patentability must be based on patents or printed publications,

whereby the submitted declarations and Court documents are clearly not prior art patents or

printed publications.

Application/Control Number: 90/012,826                                         Page 6
Art Unit: 3992

### *Requester's Position*

12.     The request indicates that the Third Party Requester alleges that:

SNQ#1.     A substantial new question of patentability of claims 14-15, 108, and 114

of the '384 Patent is raised by the combination of the AutoSketch Manual in view of Linking

CAD to the Past, and further in view of the Canvas Manual.

### *Discussion of Substantial New Question of Patentability*

13.     First, it is noted that in the instant Request for Reexamination dated 4/2/2013, claims 14,

15, 108, and 114 of the RE40,384 Patent are requested by the Third Party Requester, wherein

claims 14 and 108 are independent.  Further, it is noted that the claims of the current '384 Patent

have expired.  Because of this, the reexamination proceeding must be pursuant to 37 CFR

1.530(j), which states "No amendment may be proposed for entry in an expired patent.

Moreover, no amendment, other than the cancellation of claims, will be incorporated into the

patent by a certificate issued after the expiration of the patent."  Additionally, MPEP 2258 states,

in part:

> Original patent claims will be examined *only* on the basis of prior art patents or
> printed publications applied under the appropriate parts of 35 U.S.C. 102 and 103.
> See MPEP § 2217. During reexamination, claims are given the broadest
> reasonable interpretation consistent with the specification and limitations in the
> specification are not read into the claims *(In re Yamamoto,* 740 F.2d 1569, 222
> USPQ 934 (Fed. Cir. 1984)).  In a **reexamination proceeding involving claims
> of an expired patent**, claim construction pursuant to the principle set forth by the

court in *Phillips v. AWH Corp.*, 415 F.3d 1303, 1316, 75 USPQ2d 1321, 1329
(Fed. Cir. 2005) (**words of a claim "are generally given their ordinary and
customary meaning" as understood by a person of ordinary skill in the art in
question at the time of the invention) should be applied since the expired
claim are not subject to amendment**. The statutory presumption of validity, 35
U.S.C. 282, has no application in reexamination (*In re Etter*, 756 F.2d 852, 225
USPQ 1 (Fed. Cir. 1985)). [Emphasis added].

14.     Thus, because the '384 Patent is expired, the interpretation of the words in the claim

language will be "generally given their ordinary and customary meaning" as understood by a

person of ordinary skill in the art at the time of the invention.  With this, independent claims 14

and 108 (as well as their corresponding requested dependent claims 15 and 114) each require

methods of displaying a raster image and displaying a vector image in response to user input

commands, whereby the raster image and the vector image are displayed in a window having

coordinates referenced to a vector origin, and the raster image and the vector image are

maintained in registration using the coordinates.

15.     Continuing, looking into the prosecution history of the '384 Patent, during the reissue

proceeding, independent claim 108 was added, which contained similar limitations as that of

amended independent claim 14, whereby claim 14 was amended to include the limitation that

required "said second image being displayed in a window having coordinates referenced to a

vector origin, wherein said first image is maintained in registration with said second image using

said coordinates".  Thus, in the reissue proceeding, this feature was deemed to by the patentable

feature.

Application/Control Number: 90/012,826                                        Page 8
Art Unit: 3992

16.    Continuing, during the first reexamination proceeding, being 90/011,073, as noted above,

claims 14, 15, 108, and 114 were each indicated as being confirmed as patentable over the cited

prior art references, with the primary cited prior art reference being the Canvas Manual in that

proceeding, being a reference also cited in the proposed combination in the instant Request.

Particularly, in the previous reexamination proceeding, regarding independent claim 14, the

Examiner at the time stated on page 3 of the NIRC dated 4/27/2012 that "In this case, Patent

Owner's appeal brief filed 12/27/2011 emphasizes the ordinary meaning of certain claim

limitations in the context of the written description and the prosecution history.  In particular,

Patent owner asserts that the prior art of record does not disclose 'coordinates referenced to a

vector origin', where a raster image is maintained in registration with a vector image using

coordinates, as claimed in independent claims 14 and 108."  Further, the Examiner at the time

additionally stated on pages 3 and 4 of the NIRC that "Accordingly, the claimed 'vector origin'

is described in the context of a CAD system where the vector origin is a CAD origin.  Primary

reference, Canvas Manual, discloses a graphics system that allows a user to merge a raster image

(pixel/bitmap graphics) with a draw object defined by its position on the screen.  Page 75 of

Canvas Manual illustrates a coordinate system, but fails to disclose or suggest a vector

origin/CAD origin."

17.    Thus, with this, the feature that is deemed to be the reason that independent claim 14 was

found patentable in the previous reexamination proceeding appears to be found in the limitation

of "said second image being displayed in a window having coordinates referenced to a vector

origin, wherein said first image is maintained in registration with said second image using said coordinates". Similarly, the feature that is deemed to be the reason that independent claim 108 was found patentable appears to be found in the limitation that requires "wherein the vector-based image and the first raster image are displayed in a window having coordinates referenced to a vector origin; electronically maintaining said vector-based in registration with said raster image using said coordinates". Once again, pursuant to MPEP 2258, because this reexamination proceeding is drawn to claims of an expired patent, the "words of a claim 'are generally given their ordinary and customary meaning" as understood by a person of ordinary skill in the art in question at the time of the invention" is being applied since the expired claim are not subject to amendment.

18.     With this, in the Request dated 4/9/2013, the Third Party Requester proposes that the combination of the AutoSketch Manual in view of the Linking CAD to the Past brochure, and further in view of the Canvas Manual raises a substantial new question of patentability as to independent claims 14 and 108. But in this regard, the Examiner disagrees, and does not believe that the combination of the AutoSketch Manual in view of the Linking CAD to the Past brochure, and further in view of the Canvas Manual actually discloses the patentable features that require "said second image being displayed in a window having coordinates referenced to a vector origin, wherein said first image is maintained in registration with said second image using said coordinates", as required in independent claim 14, and similarly in independent claim 108.

Application/Control Number: 90/012,826                                      Page 10
Art Unit: 3992

19.     Particularly, the Third Party Requester describes that the AutoSketch Manual is a

program that can create vector-based objects and store the models in a memory, and the

AutoSketch Manual also discloses that the positioning of its vector-based objects uses X and Y

coordinates to maintain the vector-based image in registration.  The examiner agrees, in that the

AutoSketch Manual is seen to teach these features.  However, as noted above, the current

language of claim 14, and similarly claim 108, requires that a raster image is maintained in

registration with a vector image using a vector origin.  With this, the AutoSketch Manual does

not disclose any raster image whatsoever, as the reference of AutoSketch just discloses using

vector-based images.


20.     Continuing, in the Request, the Third Party Requester then discusses that the Linking

CAD to the Past brochure teaches that raster images can be loaded into AutoCAD, whereby the

reference describes that one can manipulate raster scanned drawings with AutoCAD, allowing

pan, zoom, scale, and setting of a variable base point, and lets a user edit and embellish raster

scanned drawings with vectors using ALL AutoCad tools.  But with this, the Linking CAD to the

Past brochure advertises the introduction of multiple different separate software programs from

Luna imaging, in particular, the LunaLink software , the LunaEdit software, and the

LunaLibrarian software.  With this, the reference, in itself, is not clear if a raster image is

maintained in registration with a vector image using a vector origin.  The Linking CAD to the

Past brochure simply gives a few features of the particular software, and does not actually

describe specific details as to how the images are maintained.

Application/Control Number: 90/012,826                                        Page 11
Art Unit: 3992

21.      Continuing, in the Request, the Third Party Requester additionally cites the Canvas

Manual, which the Requester states as disclosing the simultaneous display of a raster image and

vector-based image.  First, the Canvas Manual describes features of the graphics environment <u>for</u>

<u>Macintosh computers</u>.  With this, at the time of the invention, it is unclear if the AutoCAD

program, more specifically if AutoSketch program, which is described in the AutoSketch

Manual, was compatible with Macintosh computers.  Particularly, looking at the AutoSketch

Manual reference on page 2, the manual states "The computer must have separate

communications ports for the pointer and the plotter/printer.  Version 2.0 or higher of PC-

DOS/MS-DOS is also required."  With this, it is unclear what motivation would exist at the time

of the invention to combine the teachings of the Canvas Manual, being within the graphics

environment for Macintosh computers, with the AutoSketch drawing tool described in the

primary reference of AutoSketch, which required Version 2.0 or higher of PC-DOS/MS-DOS.

Further, as noted above, in the previous reexamination proceeding, the Canvas Manual was

extensively discussed, and the claims were found patentable because the Canvas Manual is not

seen to disclose said second image being displayed in a window having coordinates referenced to

a vector origin, wherein said first image is maintained in registration with said second image

using said coordinates", as required in independent claim 14, and similarly in independent claim

108.  Thus <u>the same question of patentability</u> was discussed in the concluded reexamination

proceeding with respect to the Canvas Manual alone.

Application/Control Number: 90/012,826                                    Page 12

Art Unit: 3992

22.      With this, none of the three cited references in the proposed combination by the Third

Party in the Request for Reexamination dated 4/2/2013 are seen to expressly disclose that a

vector image and a raster image are maintained in registration using coordinates referenced to a

vector origin.  In the Request, the Third Party Requester relies heavily on the Linking CAD to

the Past brochure for the teaching of this feature.  But as noted above, and discussed further

below, the advertisement of the Luna software is not seen to expressly disclose that a vector

image and a raster image are maintained in registration using coordinates referenced to a vector

origin.


23.      Looking at the discussion of the Linking CAD to the Past brochure in the Request for

Reexamination dated 4/2/2013, on pages 20 and 21, the Third Party Requester states that the

reference describes LunaLink, which is software that "Lets you Manipulate Raster-Scanned

Drawings with AutoCad.  - Performs total drawing conversion using all AutoCad tools.  - Allows

pan, zoom, scale and setting of variable base point.  - Output either in original raster or new

vector format".  Further, the Third Party Requester states that the Linking CAD to the Past

brochure also describes LunaEdit, which is software that "Gives AutoCad Users a Complete Set

of Editing Tools for Raster-Scanned Drawings.  - Lets you edit or embellish raster-scanned

drawings with vectors using ALL AutoCad tools.  - Allows the merging and plotting of the

edited image with the raster-scanned image".


24.      But with this teaching in the Linking CAD to the Past reference, looking at the

AutoSketch program, while being software made by the makers of AutoCAD, the AutoSketch

software is not the same as AutoCAD. The AutoSketch program appears to not have the same

exact toolset that are available in AutoCad, as in the AutoSketch Manual on page 1 of the

Manual, the reference states "Thank you for purchasing AutoSketch, the precision drawing tool

from the makers of AutoCAD, the world's most popular Computer-Aided Drafting (CAD)

system. Using AutoSketch, you can get your feet wet in CAD without drowning in a sea of

commands and options." With this, it is unclear if the LunaLink software or the LunaEdit

software or the LunaLibrarian software, being separate products, could be used with the

AutoSketch software, as the Third Party Requester suggests. As further discussed in the Linking

CAD to the Past brochure, the LunaSeries software will be "Available soon for VersaCAD &

CADKEY users." However nowhere does the reference of Linking CAD to the Past state that

the LunaLink software or the LunaEdit software, or the LunaLibrarian software are available for

AutoSketch users.


25.     Further, the reference of Linking CAD to the Past is additionally unclear if these separate

software programs of the LunaEdit software and the LunaLink software can operate together, or

if the suggested features are exclusive to the particular software. For instance, LunaLink allows

for the manipulation of raster images with AutoCAD, allowing for pan, zoom or scale settings.

But the Linking CAD to the Past reference is not clear if the LunaLink software can display or

edit the raster images with vector based images that represent user generated alterations to the

raster image, and which are displayed in response to user input commands. Additionally, the

Linking CAD to the Past reference is also unclear if the LunaEdit software, which is described as

having a function that can edit or embellish raster scanned drawings with vectors, can also allow

Application/Control Number: 90/012,826                                        Page 14
Art Unit: 3992

for panning or zooming of the merged images. Thus, the reference of Linking CAD to the Past is

falling short of expressly disclosing the claimed feature of displaying a vector image in a

window simultaneously with a raster image, with the vector image having coordinates referenced

to a vector origin, whereby the **raster image is maintained in registration with the vector**

**image using the coordinates**.

26.    Once again, MPEP 2217 states, in part:

> **Substantial new questions of patentability must be based on patents or printed**
> **publications. Other matters, such as public use or on sale, inventorship, 35 U.S.C.**
> **101, 35 U.S.C. 112, \* > conduct <, etc., will not be considered when making the**
> **determination on the request and should not be presented in the request**. Further, a
> prior art patent or printed publication cannot be properly applied as a ground for
> reexamination if it is merely used as evidence of alleged prior public use or on sale,
> **insufficiency of disclosure**, etc. The prior art patent or printed publication must be
> applied directly to claims under 35 U.S.C. 103 and/or an appropriate portion of 35 U.S.C.
> 102 or relate to the application of other prior art patents or printed publications to claims
> on such grounds. [Emphasis added].

27.    Continuing, on pages 22 and 23 of the Request for Reexamination, the Third Party

Requester additionally discusses portions of deposition transcripts from corresponding litigation.

For instance, the Third Party Requester discusses the 1998 testimony of Paul Bennett and also a

rebuttal report from Tipton Cole. But as noted above, MPEP 2217 is clear that "Substantial new

questions of patentability **must be based on patents or printed publications**." [Emphasis

added]. With this, in this reexamination proceeding, any substantial new question of

Application/Control Number: 90/012,826                              Page 15
Art Unit: 3992

patentability must be based on prior art patents and printed publications, and not based on

portions of deposition transcripts that are described in the Request.  As noted above, the

reference of Linking CAD to the Past simply falls short of expressly disclosing "said first image

is maintained in registration with said second image using said coordinates [which are referenced

to a vector origin]".

28.     Further, on page 23 of the Request for Reexamination, the Third Party Requester

additionally states that "the report of Tipton Cole from the AutoDesk Litigation submitted by

AISI is insightful in that it states: 'LunaLink...as of March 15, 1988, ...did display a raster image

in a CAD environment. ...'  Requester respectfully submits that displaying a raster image in a

CAD environment necessarily means that the raster image is in the same coordinate system ...as

the vector-based image of the CAD environment.  This use of the same coordinate system for the

raster image and the vector-based image means they will be 'maintained in registration...using

said coordinates.'"  With this, the Third Party Requester appears to be stating that the function of

maintaining a raster image in a vector-based coordinate CAD system is inherent in the teaching

provided in the Linking CAD to the Past brochure.  But as noted above, the Linking CAD to the

Past brochure describes separate functions of Luna software systems, which includes LunaLink,

LunaEdit, and LunaLibrarian software, whereby each software tool appears to contain different

functions.  With this, it is not clear how separate functions of separate software systems can be

considered as being inherent functions the Linking CAD to the Past reference.  Perhaps the

LunaLink software, which has a function of outputting "either in original raster or new vector

format" would create a new coordinate system (being the "new vector format") for the vector

Application/Control Number: 90/012,826                                    Page 16
Art Unit: 3992

images, using the origin of the raster image. The advertisement of the Linking CAD to the Past

simply is not clear enough, and is insufficient in its disclosure of the LunaLink software and/or

the LunaEdit software to determine if the reference teaches of maintaining a vector image and a

raster image in registration using the coordinates that are referenced to a vector origin, as

required in independent claims 14 and 108.


29.      Additionally, the Third Party Requester also submitted the Declaration of Udo Pooch,

which discusses the proposed combination by the Third Party Requester, and states that the

Linking CAD to the Past reference describes that a raster image and a vector image are

maintained in registration, and would be obvious to include in the AutoSketch Manual that

describes a vector origin for a vector image. But with this, as noted above, none of the

AutoSketch Manual, the Linking CAD to the Past brochure, or the Canvas Manual, expressly

describe maintaining a vector image and a raster image in registration using the coordinates that

are referenced **to a vector origin**. This is precisely the reason that claims 14, 15, 108 and 114

were confirmed as patentable in the previous reexamination proceeding, which, as discussed

above, stated that specification of the '384 Patent describes "the claimed 'vector origin' ...in the

context of a CAD system where the vector origin is a CAD origin." The examiner agrees that

the reference of the AutoSketch Manual does describe a vector origin. But there is no clear

teaching in any of the cited references, nor is it discussed as being obvious to one of ordinary

skill in the art at the time of the invention, to have the AutoSketch Manual, the Linking CAD to

the Past brochure, or the Canvas Manual that expressly disclose that the vector origin is used for

a coordinate system to maintain a vector image and a raster image in registration.

30.     Further, as noted above, MPEP 2217 requires that "Substantial new questions of

patentability must be based on patents or printed publications." Also, MPEP 2258, additionally

states, in part:

> Affidavits or declarations or other written evidence which explain the contents or
> pertinent dates of prior art patents or printed publications in more detail may be
> considered in reexamination, but **any rejection must be based upon the prior art
> patents or printed publications** as explained by the affidavits or declarations or other
> written evidence. **The rejection in such circumstances cannot be based on the
> affidavits or declarations or other written evidence as such, but must be based on
> the prior art patents or printed publications.** [Emphasis added].

31.     Thus, in the instant case, any substantial new question of patentability must be based on

the disclosures of the printed publications of the AutoSketch Manual, the Linking CAD to the

Past, and the Canvas Manual, and not found in the written evidence of the Pooch Declaration.

With this, while the Pooch Declaration does state in paragraph 9 that "someone with experience

using CAD systems at that time would understand this reliance on the CAD environment to

mean that the coordinates referenced to the origin of the CAD environment are used during the

pan and zoom operations to keep the 'raster scanned drawings' and 'vector' in sync." But as

discussed above, the Linking CAD to the Past advertisement does not expressly describe that pan

and zoom operations use coordinates referenced to the vector origin in the CAD environment.

While this may be the case, the examiner notes that it may be possible that the pan and zoom

operations in the Linking CAD to the Past brochure may use coordinates referenced to a raster

origin.  The reference of Linking CAD to the Past is insufficient in actually disclosing if pan and

zoom operations use coordinates referenced to the vector origin.  Thus, neither the Linking CAD

to the Past brochure, nor the AutoSketch Manual, are seen to expressly disclose the feature of

having a raster image maintained in registration with a vector image <u>using a vector origin,</u> as

currently required in independent claims 14 and 108.


32.      Therefore, the combination of the AutoSketch Manual, the Linking CAD to the Past

reference, and the Canvas Manual are not seen to teach the limitations of "said second image

being displayed in a window having coordinates referenced to a vector origin, wherein said first

image is maintained in registration with the second image using said coordinates", as required in

independent claim 14.  Further, the combination of the AutoSketch Manual, the Linking CAD to

the Past reference, and the Canvas Manual are not seen to teach the limitations of "wherein the

vector-based image and the first raster image are displayed in a window having coordinates

referenced to a vector origin; electronically maintaining said vector-based in a registration with

said raster image using said coordinates", as required in independent claim 108.  Therefore, <u>no</u>

<u>substantial new question of patentability has been established</u> based on the combination of the

AutoSketch Manual, the Linking CAD to the Past reference, and the Canvas Manual, as

proposed by the Third Party Requester.

Application/Control Number: 90/012,826                                  Page 19
Art Unit: 3992

### *Conclusion*

33.     Therefore, since the request for *ex parte* reexamination does not raise a substantial new

question of patentability, the request for *ex parte* reexamination of claims 14, 15, 108, and 114 of

U.S. Patent Number RE40,384 is DENIED.


34.     ALL correspondence relating to this *ex parte* reexamination proceeding should be

directed as follows:


**Please mail any communications to:**

Attn: Mail Stop *"Ex Parte* Reexam"
Central Reexamination Unit
Commissioner for Patents
P. O. Box 1450
Alexandria VA 22313-1450


**Please FAX any communications to:**

(571) 273-9900
Central Reexamination Unit


**Please hand-deliver any communications to:**

Customer Service Window
Attn: Central Reexamination Unit
Randolph Building, Lobby Level
401 Dulany Street
Alexandria, VA 22314

Application/Control Number: 90/012,826                               Page 20
Art Unit: 3992

 Any inquiry concerning this communication or earlier communications from the Reexamination
Legal Advisor or Examiner, or as to the status of this proceeding, should be directed to the
Central Reexamination Unit at telephone number (571) 272-7705.

     Signed:


     */Joseph R. Pokrzywa/*

     _____
     Joseph R. Pokrzywa
     Primary Examiner
     Central Reexamination Unit 3992
     (571) 272-7410


     Conferees:
     /ERON J SORRELL/
     Primary Examiner, Art Unit 3992

     /Daniel J Ryman/
     Supervisory Patent Examiner, Art Unit 3992

Receipt date: 04/02/2013

Doc code: IDS

Doc description: Information Disclosure Statement (IDS) Filed

PTO/SB/08a (01-10)
Approved for use through 07/31/2012. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT ( Not for submission under 37 CFR 1.99) | Application Number | |
|---|---|---|
| | Filing Date | |
| | First Named Inventor | William Opincar |
| | Art Unit | |
| | Examiner Name | |
| | Attorney Docket  Number | 8873R004E |

| U.S.PATENTS | | | | | | Remove |
|---|---|---|---|---|---|---|
| Examiner Initial* | Cite No | Patent Number | Kind Code[1] | Issue Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear |
| | 1 | | | | | |

If you wish to add additional U.S. Patent citation information please click the Add button. **Add**

| U.S.PATENT APPLICATION PUBLICATIONS | | | | | | Remove |
|---|---|---|---|---|---|---|
| Examiner Initial* | Cite No | Publication Number | Kind Code[1] | Publication Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear |
| | 1 | | | | | |

If you wish to add additional U.S. Published Application citation information please click the Add button. **Add**

| FOREIGN PATENT DOCUMENTS | | | | | | | Remove |
|---|---|---|---|---|---|---|---|
| Examiner Initial* | Cite No | Foreign Document Number[3] | Country Code[2] i | Kind Code[4] | Publication Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear | T[5] |
| | 1 | | | | | | ☐ |

If you wish to add additional Foreign Patent Document citation information please click the Add button **Add**

| NON-PATENT LITERATURE DOCUMENTS | | | Remove |
|---|---|---|---|
| Examiner Initials* | Cite No | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc), date, pages(s), volume-issue number(s), publisher, city and/or country where published. | T[5] |

Receipt date: 04/02/2013

| | | |
|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** ( Not for submission under 37 CFR 1.99) | Application Number | |
| | Filing Date | |
| | First Named Inventor | William Opincar |
| | Art Unit | |
| | Examiner Name | |
| | Attorney Docket Number | 8873R004E |

| /J.P./ | 1 | AutoSketch User Guide (June 6, 1988) ("AutoSketch Manual") | ☐ |
|---|---|---|---|
| /J.P./ | 2 | Linking CAD to the Past Brochure Distributed at Chicago Trade Show ("Linking CAD to the Past") on May 2-5, 1988 | ☐ |
| /J.P./ | 3 | Canvas, Complete Graphics Environment for the Macintosh, Version 1.0 (1987) ("Canvas Manual") | ☐ |
| /J.P./ | 4 | 37 CFR 1.131 Declarations submitted by AISI in the reissue application in which named inventors William A. Opincar and Paul Bennett state that "Linking CAD to the Past" was handed out at the May 2-5, 1988 Chicago A/E/C tradeshow where a version of software containing some of the features of the claimed invention was demonstrated. | ☐ |
| /J.P./ | 5 | Declaration of Jorge Miranda (the creator of Canvas) | ☐ |
| /J.P./ | 6 | Declaration of Dr. Udo Pooch ("Pooch Declaration") | ☐ |

If you wish to add additional non-patent literature document citation information please click the Add button **Add**

**EXAMINER SIGNATURE**

| Examiner Signature | /Joseph Pokrzywa/ | Date Considered | 04/23/2013 |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through a citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

[1] See Kind Codes of USPTO Patent Documents at www.USPTO.GOV or MPEP 901.04. [2] Enter office that issued the document, by the two-letter code (WIPO Standard ST.3). [3] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. [4] Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. [5] Applicant is to place a check mark here if English language translation is attached.

| | |
|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT**<br>( Not for submission under 37 CFR 1.99) | Application Number | |
| | Filing Date | |
| | First Named Inventor | William Opincar |
| | Art Unit | |
| | Examiner Name | |
| | Attorney Docket Number | 8873R004E |

**CERTIFICATION STATEMENT**

Please see 37 CFR 1.97 and 1.98 to make the appropriate selection(s):

☐ That each item of information contained in the information disclosure statement was first cited in any communication from a foreign patent office in a counterpart foreign application not more than three months prior to the filing of the information disclosure statement. See 37 CFR 1.97(e)(1).

**OR**

☐ That no item of information contained in the information disclosure statement was cited in a communication from a foreign patent office in a counterpart foreign application, and, to the knowledge of the person signing the certification after making reasonable inquiry, no item of information contained in the information disclosure statement was known to any individual designated in 37 CFR 1.56(c) more than three months prior to the filing of the information disclosure statement. See 37 CFR 1.97(e)(2).

☐ See attached certification statement.

☐ The fee set forth in 37 CFR 1.17 (p) has been submitted herewith.

☒ A certification statement is not submitted herewith.

**SIGNATURE**

A signature of the applicant or representative is required in accordance with CFR 1.33, 10.18. Please see CFR 1.4(d) for the form of the signature.

| Signature | /Daniel M. De Vos/ | Date (YYYY-MM-DD) | 2013-04-02 |
|---|---|---|---|
| Name/Print | Daniel M. De Vos | Registration Number | 37813 |

This collection of information is required by 37 CFR 1.97 and 1.98. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 1 hour to complete, including gathering, preparing and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

Receipt date: 04/02/2013

## Privacy Act Statement

The Privacy Act of 1974 (P.L. 93-579) requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1.  The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C. 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether the Freedom of Information Act requires disclosure of these record s.

2.  A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.

3.  A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.

4.  A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).

5.  A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.

6.  A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).

7.  A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.

8.  A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspections or an issued patent.

9.  A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

EFS Web 2.1.17

 UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

**DO NOT USE IN PALM PRINTER**

(THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS)

BLAKELY SOKOLOFF TAYLOR & ZAFMAN
1279 OAKMEAD PARKWAY
SUNNYVALE, CA  94085-4040

**MAILED**

MAY 0 3 2013

CENTRAL REEXAMINATION UNIT

# *EX PARTE* REEXAMINATION COMMUNICATION TRANSMITTAL FORM

REEXAMINATION CONTROL NO. *90/012,826*.

PATENT NO. *RE40384 ET AL.*.

ART UNIT *3992*.

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above identified *ex parte* reexamination proceeding (37 CFR 1.550(f)).

Where this copy is supplied after the reply by requester, 37 CFR 1.535, or the time for filing a reply has passed, no submission on behalf of the *ex parte* reexamination requester will be acknowledged or considered (37 CFR 1.550(g)).

PTOL-465 (Rev.07-04)