IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| AMERICAN IMAGING SERVICES, INC., | § § § | |
| Plaintiff, | § | Civil Action No. 3:09-CV-733-M |
| v. | § § | |
| | § | JURY TRIAL DEMANDED |
| AUTODESK, INC., | § § | |
| Defendant. | § § | |

## PLAINTIFF AMERICAN IMAGING'S RESPONSE TO DEFENDANT'S MOTIONS *IN LIMINE*

Defendant Autodesk, Inc. ("Autodesk") filed 12 Motions *in Limine* with associated briefs. (Doc. 302). Plaintiff American Imaging Services, Inc. ("American Imaging") agrees to the following aspects of Autodesk's Motions *in Limine:*

- Motion 1 in part (agreed with respect to part "I" about "vector-based image[s]" only);

- Motion 2;

- Motion 3;

- Motion 4 in part (agreed with respect to Autodesk total company-wide revenue and profits, and total revenue and profits of non-accused products only);

- Motion 9 in part (agreed with respect to contributory infringement only); and

- Motion 10 in part (agreed with respect to the secondary consideration of "copying" only).

The remaining aspects of Motions 1, 4, 9, and 10 are addressed below along with the entirety of Motions 5-8, 11 and 12. The parties have conferred on both sides' Motions and are unable to agree other than as set forth in their respective responses.

1

**AUTODESK MOTION NO. 1 (PART II):**

American Imaging should not be allowed to argue to the jury that SuperPaint does not disclose "vector origin," "coordinates referenced to a vector origin," or "maintain in registration using the coordinates referenced to a vector origin."

**RESPONSE TO MOTION NO. 1 (PART II):**

Autodesk's Motion reiterates the argument made in its Supplemental Reply in support of its Motion to Exclude the Testimony of Plaintiff's expert Tipton Cole. (Doc. 298). That argument was rejected by the Court in its Order of September 26, 2013 allowing Mr. Cole to testify without the restrictions sought by Autodesk. (Doc. 305). Autodesk's Motion is therefore moot and should therefore be denied for the same reasons set forth in the Court's Order. To the extent that Autodesk's instant motion and its Supplemental Reply can be read to considerably broaden its original motion to exclude Mr. Cole's testimony (Doc. 197) and place additional limits on Mr. Cole's testimony on SuperPaint, its Motion *in Limine* is untimely under the scheduling order and should be rejected as such.

**AUTODESK MOTION NO. 4:**

Preclude American Imaging from making any reference to Autodesk's total revenues or profits.

**RESPONSE TO MOTION NO. 4:**

American Imaging has agreed not to discuss Autodesk's total revenues or profits on unaccused products. It appears that is the sole request in Autodesk's Motion.

To the extent that Autodesk seeks to prevent American Imaging from presenting evidence related to the total revenues or profits on the accused products, there is no basis for such a request and none has been articulated by Autodesk. American Imaging is not using the "entire

market value theory" of damages, and thus is not seeking to capture the entire revenue base for the accused products as the basis of a reasonable royalty. Instead, American Imaging has apportioned that revenue base to capture an applicable royalty base that is smaller than the entire revenue base. In presenting evidence of apportionment, it is necessary to present evidence of the larger revenue base in order to show how the applicable royalty base was determined.

**AUTODESK MOTION NO. 5:**

Exclude proposed Trial Exhibit 192

**RESPONSE TO MOTION NO. 5:**

Autodesk seeks to exclude proposed trial exhibit 192 as unfairly prejudicial. The Court will recognize this Motion as a veiled attempt by Autodesk to reargue its Motion to Strike American Imaging's damages expert Mr. Gemini, as Exhibit 192 is one of the primary documents relied upon by Mr. Gemini in his analysis. Exhibit 192 is clearly admissible and not unduly prejudicial. First, Exhibit 192 is a document produced by Autodesk from its own files. Second, Exhibit 192 is a study commissioned by Autodesk to investigate the use of raster imagery by its customers and potential customers as part of an effort to determine what investment to make in its Raster Design product. Autodesk's internal documentation about the use of raster imagery by the market is clearly relevant in this case in which the claimed invention concerns the use and manipulation of raster images. Third, the fact that Raster Design is not an accused product does not render this exhibit irrelevant or lacking foundation. Trial Exhibit 192 is not exclusively, or even mostly, about Autodesk's Raster Design product. Instead, it is a study about the use of raster imagery by users and potential users of Autodesk products. Moreover, even if the study was exclusively about the Raster Design product, Autodesk has repeatedly argued (as it did during the last hearing on September 6, 2013) that revenue from Raster Design,

if anything, should be the basis for American Imaging's damages claim. Autodesk cannot simultaneously argue that Raster Design is important yet argue that a study tangentially concerned with it is unfairly prejudicial. Fourth, Autodesk clearly does not like Trial Exhibit 192, but that is not a legitimate reason to exclude it. Autodesk can put on testimony from its witnesses as to why the study was not credible or why it was "sensationalistic" for the jury's consideration. There is no basis under Rule 403 or any other reason to exclude Exhibit 192.

**AUTODESK MOTION NO. 6:**

Exclude proposed Trial Exhibit 500 and the deposition testimony of Peter Southwood

**RESPONSE TO MOTION NO. 6:**

Autodesk seeks to exclude Trial Exhibit 500—an online presentation given by Autodesk employee Peter Southwood in September 2006 that includes audience participation questions and answers from Mr. Southwood—as unauthenticated and hearsay. Although Mr. Southwood stated at the beginning of his deposition that he did not recognize Exhibit 500, he also testified that he has given a presentation with the same title as Exhibit 500 and that it was "very possible" that he gave that presentation on the date identified on Exhibit 500. (Southwood Dep. 8:6-17). Mr. Southwood similarly testified that he had no reason to believe that he did not conduct the poll that is included as part of Exhibit 500. (Southwood Dep. 30:1-18). Mr. Southwood also testified at the end of his deposition that Exhibit 500 was a presentation that he gave with information he was given by others at Autodesk. (Southwood Dep. 150:12-23). Mr. Southwood's testimony, as well as the indicia on the face of the presentation given in Exhibit 500 as originating with

Autodesk, are sufficient to support a finding that Exhibit 500 is what it purports to be.  Fed. R. Evid. 901.[1]

Exhibit 500 also falls within exception (8) of Federal Rule 803 as a record of a regularly conducted activity and is therefore not excludable as hearsay.  First, Mr. Southwood testified that he recognized the domain name of the website from which Exhibit 500 was pulled (*i.e.*, Live Meeting.com).  (Southwood Dep. 9:14-21).  He then testified that taking polls was a standard function of Live Meeting where people watching the presentation contemporaneously answer questions. (*Id*. at 29:21-30:8).  Second, Exhibit 500 is clearly a record kept in the course of the normal business of Microsoft/Live Meeting, as it was obtained from its website more than three years after the date of the presentation itself.  (Compare page 2 date of September 2006 on presentation to footer of page 2 noting download on October 16, 2009).  Third, similarly, keeping records of its own presentations is clearly something that Autodesk did and also something that Microsoft/Live Meeting did, as evidenced by the continued existence of this presentation.  Mr. Southwood's testimony concerning polls also indicates that he regularly used such polls during his live presentations.  *See, e.g.*, Southwood Dep. 61:14-62:8 discussing changes he might make to a presentation based on understanding poll results.  The presentation of Exhibit 500 itself also shows that taking polls was a regular part of this presentation as the first agenda item is "polls."  (Ex. 500 at Slide 4 of 22).  Fourth, Mr. Southwood has testified to the facts stated above as to the creation and existence of Exhibit 500.  Fifth, nothing about Exhibit 500 or its origin from the Live Meeting website indicates a lack of trustworthiness. Thus,

---

[1] American Imaging also notes that the presentation that is part of Exhibit 500 is clearly relevant as it discusses the use of raster data and Autodesk products dealing with that data and should have been produced by Autodesk during the litigation. Autodesk should not benefit from its failure to produce this document by having it excluded as unauthenticated when it would be otherwise admissible automatically as a business record.

Exhibit 500, including the Autodesk embedded presentation and the poll questions and answers, is admissible, non-hearsay evidence.

Autodesk moves to exclude the polling results within Exhibit 500 as irrelevant. Similarly to Exhibit 192, Autodesk clearly seeks to have Exhibit 500 precluded because it does not like the results set forth and so that Plaintiff's expert Mr. Gemini will not be able to use it to support his damages opinion. Again, there is nothing inherently deceptive about the poll results. Autodesk can argue the reliability and scope of the poll taken to the jury, but the poll itself is relevant as it is a poll taken in the context of a presentation about the use of raster data.

Autodesk provides no argument as to how Mr. Southwood's testimony is irrelevant. The fact that Mr. Southwood is not an expert on the accused products does not make his testimony irrelevant. The testimony designated by American Imaging concerns Exhibit 500 and Mr. Southwood's personal knowledge of customers and trends. That testimony is relevant information on the market for raster editing products and Autodesk's knowledge of that market. American Imaging is willing to withdraw the designation of Mr. Southwood's testimony as to his lack of preparation for his deposition (Southwood Dep. 153:15-21), but the remainder of its designation concerns relevant admissible information.

**AUTODESK MOTION NO. 7:**

Preclude American Imaging from offering testimony or evidence regarding non-accused products to the jury.

**RESPONSE TO MOTION NO. 7:**

Autodesk's Motion seeking to exclude evidence about non-accused products reflects a fundamental misapprehension of the purpose and effect of a stipulation to a representative product for the purpose of evaluating infringement. Autodesk essentially argues that any

document that is not expressly about AutoCAD 2011 should be excluded under Rule 403, because its probative value is substantially outweighed by the danger of jury confusion. Although the parties agreed to use AutoCAD 2011 as a representative product, that agreement was for the purpose of proving infringement only and cannot properly serve as a limitation on the scope of American Imaging's presentation of evidence at trial. American Imaging's exhibit list contains several manuals and documents produced by Autodesk related to products other than AutoCAD 2011. Autodesk's statements *in any of its documents* about rasters, vectors, the market for its products, or business plans regarding raster data are clearly relevant to the issues in this case and should be permitted as background, context, knowledge of the market, or any other kind of evidence. Autodesk is free to address its concerns about confusion by examining witnesses about the subject of any document that is not expressly about AutoCAD 2011. No American Imaging witness is going to offer testimony that any product other than AutoCAD 2011 is accused of infringement, nor will American Imaging be requesting damages for sales of any unaccused product (an apparent fear of Autodesk per page 3 of its brief). There is simply no substantial danger of confusion.

**AUTODESK MOTION NO. 8:**

Preclude American Imaging from presenting arguments, or evidence to the jury regarding reexamination, including Trial Exhibits 145, 502-504

**RESPONSE TO MOTION NO. 8:**

Autodesk seeks to preclude all evidence regarding reexamination arguing that its probative value is substantially outweighed by the danger of jury confusion. Autodesk articulates no real rationale as to how a jury could be confused by this evidence. Autodesk's first concern is that the jury will be misled into thinking that the presumption of validity is stronger

because of its failed attempts at reexamination. This concern is not legitimate considering that the Court will instruct the jury on the presumption and on the weight of evidence required from Autodesk to prove invalidity. American Imaging has not requested any instruction implying that the presumption has become stronger or otherwise changed due to the reexamination.

Autodesk's remaining concerns can all be addressed with examination of witnesses and discussion of documentation from the reexamination. Both parties will put on evidence of exactly which references were considered by the Patent Office in reexamination and which were not considered. Autodesk presumably plans to present evidence discussed in its brief (page 3) regarding the reexamination process. Contrary to Autodesk's implication, both sides will be able to present evidence and argument to the jury about the structure of the reexamination.

American Imaging is entitled to tell the jury about Autodesk's multiple unsuccessful attempts to invalidate the claims. This evidence is highly relevant. As presumed experts in the field of the patented invention, the final determination by the Patent Office on validity of the claims in view of references asserted by Autodesk in this case is certainly at least as probative as any expert testimony that Autodesk plans to elicit about the scope of the prior art and its alleged disclosure of the claimed elements. "One purpose of the reexamination procedure is to…provid[e] the district court with the expert view of the PTO (when a claim survives the reexamination proceeding)." *Gould v. Control Laser Corp.*, 705 F.2d 1340, 1342 (Fed. Cir. 1983).

In each case cited by Autodesk in support of its motion (*Tesco*, *Belden Techs*. and *IA Labs*), the reexaminations were not complete and a party was seeking to present evidence of an interim determination by the Patent Office. In contrast here, the three reexaminations at issue are final and complete. As such, the reexaminations are fairly considered to be part of the

prosecution history in this case. "The prosecution history, which we have designated as part of the 'intrinsic evidence,' consists **of the complete record of the proceedings before the PTO** and includes the prior art cited during the examination of the patent…Like the specification, the prosecution history provides evidence of how the PTO and the inventor understood the patent." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1317 (Fed. Cir. 2005) (en banc) (emphasis added). Autodesk cannot show that the risk of jury confusion substantially outweighs the probative value of admitting the full prosecution history of the '384 Patent

It was Autodesk's choice to attempt multiple reexaminations, and it should have to live with the consequences. Certainly, Autodesk would have happily accepted an invalidation of the claims as a result of its reexaminations. It must now accept the adverse record that its actions created. While it is true that the standards used by the Patent Office to evaluate the patentability (*i.e.*, validity) of a claim in view of the prior art are different in a reexamination compared to the standard for a jury evaluating invalidity, the Patent Office standards are more favorable to the patent challenger. The Patent Office does not employ a presumption of validity and uses a preponderance of the evidence standard of proving nonpatentability in examining every claim using the broadest reasonable claim interpretation. *Ethicon v. Quigg*, 849 F.2d 1422, 1427 (Fed. Cir. 1988); *In Re Yamamoto*, 756 F.2d 852, 858 (Fed. Cir. 1984). In contrast, a jury is instructed on the presumption of validity that it must find invalidity by clear and convincing evidence using the Court's claim construction, which is necessarily either the same as the broadest reasonable claim interpretation or is narrower. Thus, even though the standards are different, it is highly probative that the Patent Office allowed all of the claims <u>under an easier standard</u> of invalidation than the standard employed by the jury. There is no question as to the admissibility of the original prosecution history and the reissue prosecution history, including discussion of the

references considered by the Examiner and his determinations after such consideration based on the Patent Office standards. These final reexaminations are no different than the rest of the prosecution history.

**AUTODESK MOTION NO. 9:**

Preclude American Imaging from presenting arguments or testimony on infringement based on the doctrine of equivalents.

**RESPONSE TO MOTION NO. 9:**

Autodesk's Motion appears to seek to preclude American Imaging from eliciting fact testimony relevant to the doctrine of equivalents. To the extent that Autodesk seeks to preclude American Imaging's expert Mr. Cole from testifying outside the scope of his report, American Imaging acknowledges that all experts in the case are bound by their reports under the Rules. Mr. Cole has stated clearly in his report that "each asserted claim … is infringed under the doctrine of equivalents because whatever differences there may be between the software and the asserted claims are insubstantial and do not materially impact [his] analysis of any claim limitation." Cole Infringement Report, ¶114.

Any additional basis of Autodesk's Motion is unclear. It cannot be disputed that "the determination of whether an accused device is the equivalent of a claimed invention is a question of fact." *Insta-Foam Prods., Inc. v. Universal Foam Sys., Inc.*, 906 F.2d 698 (Fed. Cir. 1990). Autodesk cites no rule of evidence that would prevent American Imaging from putting on testimony from any witness from which a jury could conclude that the representative product AutoCAD 2011 is the equivalent of any claimed invention. The jury will be properly instructed on the legal requirements to make its factual finding, but there is no evidentiary basis to prevent

Autodesk from putting on testimony from Mr. Cole *or any other witness* that the jury could consider in its determination.

**AUTODESK MOTION NO. 10:**

Preclude American Imaging from presenting arguments or testimony regarding the secondary considerations of non-obviousness of commercial success, long felt need, unexpected superior results, and teaching away.

**RESPONSE TO MOTION NO. 10:**

Just as with Autodesk's Motion No. 9, this Motion appears to seek to preclude American Imaging from eliciting testimony from any witness it chooses on facts related to invalidity. Again, Autodesk cites no authority to support this request. Just as with the doctrine of equivalents, the presence or absence of the secondary considerations of non-obviousness is a fact question for the jury. *Finisar Corp. v. DirectTV Group, Inc.*, 523 F.3d 1323, 1338-39 (Fed. Cir. 2008). Regardless of whether any American Imaging expert has testified about any of these facts or has formed opinions about any particular factor, the jury is the fact finder and can consider evidence from witnesses other than Plaintiff's experts Mr. Cole and Mr. Gemini. The error in Autodesk's position is apparent in view of the nature of the evidence it seeks to preclude.

Evidence relevant to at least some of the factors of non-obviousness will never come from an expert witness. For example, neither Mr. Cole nor Mr. Gemini have the personal knowledge to testify about commercial success of the patented product. Neither Mr. Cole nor Mr. Gemini have personal knowledge of the sales figures of either Plaintiff or Defendants' products or any other third party product that is covered by the patent, as neither expert is employed by any of those companies. Evidence of commercial success will always come from fact witnesses for one or both parties or business records and testimony of a third party fact

witness. Autodesk's entire brief in support of this Motion essentially argues that any evidence that American Imaging could have would be so insubstantial that no jury could ever rely on it. *See, e.g.*, page 3 arguing about how the existence of CAD Overlay shows a lack of long felt need. Autodesk's argument goes to the weight of the evidence, not its admissibility, and fails entirely to demonstrate that there is some prejudice to it by allowing American Imaging to fully present a counter to Autodesk's invalidity defense by introducing any evidence it has about the secondary considerations of non-obviousness.

**AUTODESK MOTION NO. 11:**

Preclude American Imaging from making any reference to the compensation of Autodesk's expert witnesses.

**RESPONSE TO MOTION NO. 11:**

The amount that Autodesk has paid its expert witnesses is directly relevant to any bias that they may have in testifying in a certain manner favoring Autodesk. Autodesk asserts that the probative value of that information is substantially outweighed by the risk of undue prejudice, confusion, and harassment. It is difficult to imagine how asking an expert how much he has been paid and how many hours he has spent on the case could be prejudicial or confusing to the jury. The answers to those questions are straightforward. A limited number of questions on this topic is not inherently harassing or otherwise excludable under Rule 403.

**AUTODESK MOTION NO. 12:**

Preclude American Imaging from referencing the court's rulings from the bench trial to the jury.

**RESPONSE TO MOTION NO. 12:**

American Imaging does not object outright to this Motion, as American Imaging has several Motions of its own directed to excluding facts and issues from the bench trial to avoid prejudice. However, in conferring with counsel for Autodesk, it became clear to American Imaging that there will be a serious dispute over what is disclosed and presented to the jury that was previously the subject of the bench trial. For example, given Autodesk's refusal to agree not to make allegations during the jury trial that American Imaging lost documents and failed to produce documents in this case (allegations clearly related only to the spoliation defense that would be presented to the jury for the sole purpose of trying to make American Imaging look like it was hiding something improperly), American Imaging cannot agree that the Court's rulings from the bench trial should be excluded. American Imaging believes that it is appropriate to exclude the evidence from the bench trial related to the equitable issues, but it must be allowed to counter Autodesk's misleading presentation if the Court allows Autodesk to present inflammatory, prejudicial evidence.

Dated: September 30, 2013

Respectfully submitted,

/s/ Paul V. Storm
Paul V. Storm
  State Bar No. 19325350
pvstorm@gardere.com
Sarah M. Paxson
  State Bar No. 24032826
spaxson@gardere.com
Gardere Wynne Sewell LLP
1601 Elm Street, Suite 3000
Dallas, TX 75201
214.999.3000 (phone)
214.347.4667 (fax)

Jonathan T. Suder
  State Bar No. 19463350
jts@fsclaw.com
Todd I. Blumenfeld
  State Bar No. 24067518
blumenfeld@fsclaw.com
FRIEDMAN, SUDER & COOKE
Tindall Square Warehouse No. 1
604 East 4th Street, Suite 200
Fort Worth, TX 76102
817.334.0400 (phone)
817.334.0401 (fax)

**ATTORNEYS FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

    The undersigned certifies that the foregoing document was filed electronically and served on counsel of record via CM/ECF on September 30, 2013.

/s/ Paul V. Storm

Paul V. Storm