

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
**FILED**

OCT 1 6 2013

CLERK, U.S. DISTRICT COURT
By _____
        Deputy

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| AMERICAN IMAGING SERVICES, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:09-cv-733-M |
| | § | |
| AUTODESK, INC., | § | |
| | § | |
| Defendant. | § | |

## COURT'S CHARGE TO THE JURY

MEMBERS OF THE JURY:

Now that you have heard the evidence in the case, I will instruct you on the law you must

apply. First, I will give you some general instructions which apply in every case: for example,

instructions about burden of proof and how to judge the believability of witnesses. Then I will

give you some specific rules of law about this particular case, and finally I will explain to you

the procedures you should follow in your deliberations.

### GENERAL INSTRUCTIONS

You, as jurors, are the judges of the facts. But in determining what actually happened—

that is, in reaching your decision as to the facts—it is your sworn duty to follow all of the rules

of law as I explain them to you. You have no right to disregard or give special attention to any

one instruction, or to question the wisdom or correctness of any rule I may state to you. You

must not substitute or follow your own notion or opinion as to what the law is or ought to be. It

is your duty to apply the law as I explain it to you, regardless of the consequences.

Answer each question from the facts as you find them. Do not decide who you think

should win and then answer the questions accordingly. Your answers and your verdict must be

unanimous.

The Plaintiff in this case is American Imaging Services, Inc., which I will refer to as "American Imaging" or the "Plaintiff." The Defendant in this case is Autodesk, Inc., which I will refer to as "Autodesk" or the "Defendant."

Certain questions require a "preponderance of the evidence" for an affirmative answer. Preponderance of the evidence means the greater weight and degree of credible evidence before you. In other words, a preponderance of the evidence means the amount of evidence that persuades you that a claim is more likely true than not true. Other questions require "clear and convincing evidence", which is a greater burden of proof, for an affirmative answer. Clear and convincing evidence means that it is highly probable that a certain fact is true. In determining whether any fact has been proven by a preponderance of the evidence or by clear and convincing evidence, you may, unless otherwise instructed, consider the parties' stipulations, testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them. American Imaging has the burden of proof by a preponderance of the evidence on Questions 1 and 2. Autodesk has the burden of proof by clear and convincing evidence on Questions 3, 4, and 5.

You may have heard of the phrase "proof beyond a reasonable doubt." That is a stricter standard that applies in criminal cases. It does not apply at all in this case. You should therefore put it out of your minds.

As I told you earlier, it is your duty to determine the facts. In doing so, you must consider only the evidence presented during the trial, including stipulations, sworn testimony of the witnesses, and the exhibits. Remember that any statements, objections, or arguments made by the lawyers are not evidence. The function of the lawyers is to point out those things that are

most significant or most helpful to their side of the case, and in so doing to call your attention to certain facts or inferences that might otherwise escape your notice. In the final analysis, however, it is your own recollection and interpretation of the evidence that controls in the case. What the lawyers say is not binding upon you.

During the course of the trial, you have heard counsel make objections to evidence. It is the duty of the attorneys on each side of a case to object when the other side offers testimony or other evidence that the attorney believes is not properly admissible. You should not hold it against an attorney or his client because the attorney has made objections.

When I allowed testimony or other evidence to be introduced over the objection of any attorney, the Court was not indicating any opinion as to the weight or effect of such evidence.

Do not assume from anything I may have done or said during the trial that I have any opinion concerning any of the issues in this case. Except for the instructions to you on the law, you should disregard anything I may have said during the trial in arriving at your own findings as to the facts.

If the Court sustained an objection to a question addressed to a witness, you are to disregard the question entirely and may draw no inference from the wording of it or speculate as to what the witness would have said if the witness had been permitted to answer. If I struck any testimony and instructed you to disregard it, you must do so. Your verdict must be based solely on the admitted evidence, stipulations, and testimony. If I instructed you to consider an exhibit only for a limited purpose, you must do so.

You are the sole judges of the credibility or believability of each witness and the weight to be given to his or her testimony. You should carefully examine all the testimony given, the circumstances under which each witness has testified, and every matter in evidence tending to

show whether a witness is worthy of belief.  In weighing the testimony of a witness, you should

consider the witness's motive; any bias or prejudice the witness may have; the witness's

demeanor or manner while testifying; the witness's interest, if any, in the outcome of the case;

the witness's candor, fairness and intelligence; the witness's opportunity and ability to see or

hear or know things that the witness testified about; the quality of the witness's memory; and

whether the witness's testimony has been supported or contradicted by other credible evidence.

You may accept or reject the testimony of any witness in whole or in part.

A witness may be "impeached," or discredited, by a showing that the witness testified

falsely concerning some important fact, or by evidence that at some other time the witness said

or did something, or failed to say or do something, that was different from the testimony the

witness gave before you during the trial.  If you believe any witness has been impeached and

thus discredited, you may give the testimony of that witness such credibility, if any, as you think

it deserves.

You should keep in mind, of course, that a simple mistake by a witness does not

necessarily mean that the witness was not telling the truth as he or she remembers it, because

people may forget some things or remember other things inaccurately.  So if a witness has made

a misstatement, you need to consider whether that misstatement was an intentional falsehood or

simply an innocent lapse of memory; and the significance of that may depend on whether it has

to do with an important fact, or only with an unimportant detail.  Inconsistencies or discrepancies

in the testimony of a witness, or between the testimony of different witnesses, may or may not

cause you to discredit such testimony.  Two or more persons seeing an event may see or hear it

differently.  In weighing the effect of a discrepancy, always consider whether it pertains to a

matter of importance or an unimportant detail, and whether the discrepancy results from innocent

error or intentional falsehood.

While you should consider only the evidence, you are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in the light of common experience. In other words, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts that have been established by the testimony and evidence.

The testimony of a single witness may be sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary, if after considering all the other evidence, you believe that single witness.

There are two types of evidence that you may consider in properly finding the truth as to the facts in the case. One is direct evidence—such as testimony of an eyewitness. The other is indirect or circumstantial evidence—the proof of a chain of circumstances that indicates the existence or nonexistence of certain other facts. As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that you find the facts from a preponderance of all the evidence, both direct and circumstantial.

When knowledge of technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field—an expert witness—is permitted to state an opinion on those technical matters. However, you are not required to accept that opinion. As with any other witness, it is up to you to decide whether to rely upon it.

In deciding whether to accept or rely upon the opinion of an expert witness, you may consider any bias of the witness, including any bias you may infer from evidence that the expert witness has been or will be paid for reviewing the case and testifying, or from evidence that he testifies regularly as an expert witness and his income from such testimony represents a

significant portion of his income.

Certain testimony has been presented to you through depositions. A deposition is the sworn, recorded answers to questions asked a witness in advance of the trial. Under some circumstances, that witness's testimony may be presented, under oath, in the form of a deposition. Sometime before this trial, attorneys representing the parties in this case questioned the witness under oath. A court reporter was present and recorded the testimony. The questions and answers have been read and/or shown to you. This deposition testimony is entitled to the same consideration and is to be judged by you as to credibility and weighed and otherwise considered by you insofar as possible in the same way as if the witness had been present and had testified from the witness stand in court.

In deciding the facts of this case, you must not be swayed by bias, prejudice, or favor as to any party. Our system of law does not permit jurors to be governed by prejudice, sympathy, or public opinion. The parties and the public expect that you will carefully and impartially consider all of the evidence in the case, follow the law as stated by the Court, and reach a just verdict regardless of the consequences.

Any notes that you have taken during this trial are only aids to memory. If your memory should differ from your notes, then you should rely on your memory and not on the notes. The notes are not evidence. A juror who has not taken notes should rely on his or her independent recollection of the evidence and should not be unduly influenced by the notes of other jurors. Notes are not entitled to any greater weight than the recollection or impression of each juror about the testimony.

## SPECIFIC INSTRUCTIONS

## CONTENTIONS OF THE PARTIES

American Imaging contends that Autodesk uses and/or induces Autodesk customers to use a method that infringes certain claims of United States Patent No. RE 40,384E (the "'384 Patent"). American Imaging contends that any version of the following products, made, used, or sold by Autodesk on or after June 17, 2008, infringe claims 14, 15, 108 and 114 of the '384 patent: (1) AutoCAD; (2) AutoCAD LT; (3) AutoCAD Map 3D; (4) AutoCAD Architecture; (5) AutoCAD Civil; (6) AutoCAD Civil 3D; (7) AutoCAD Electrical; (8) AutoCAD Land Desktop; (9) AutoCAD Mechanical; (10) AutoCAD MEP; (11) AutoCAD P&ID; (12) AutoCAD Plant 3D; and (13) AutoCAD Structural Detailing.

Autodesk denies that it is infringing any claim of the '384 patent and contends that the patent is invalid as anticipated, obvious, and subject to the on-sale bar. Your job is to decide whether the asserted claims of the '384 patent have been infringed and whether any of the asserted claims of the '384 patent are invalid for the reasons claimed by Autodesk.

## THE MEANING OF CLAIM TERMS

Before you decide whether Autodesk has infringed the claims of the '384 patent and whether the asserted claims of the '384 patent are invalid, you will have to understand the patent claims. The patent claims involved here are claims 14, 15, 108, and 114, beginning at column 10, line 66 of the '384 patent. The claims are intended to define, in words, the boundaries of the invention. The claims define what was made by the inventor, what the patent owner owns, and what the patent owner may prevent others from doing. Only the claims of the patent can be infringed. Neither the written description nor the drawings of a patent can be infringed. Each of the claims must be considered individually. Claims may describe devices or products, or they

may, as claims 14, 15, 108, and 114 do, describe methods or processes for making or using a product. Such claims are called "method claims."

Every patent claim requires individual steps, or requirements, called "limitations." For example, a product claim that covers a table may recite a tabletop, four legs, and the glue that secures the legs to the tabletop. The tabletop, legs, and glue that secure the legs to the tabletop are each a separate requirement, or limitation, of the claim.

As I have told you, I have interpreted the meaning of certain words and phrases in the asserted claims in this case. During your deliberations you must apply these meanings:

| Claim Number in which Claim Term Appears | Claim Term | Definition |
|---|---|---|
| 14 and 108 | vector-based/vector based image(s) | image(s) of an object having a specified length and direction in a geometric shape, such as a circle, square, or line |
| 14 and 108 | raster image | image made up of pixels, such as a bitmap, displayed in a grid |
| 108 | raster file | a computer file in which a raster image is stored |
| 14 | edited raster image | raster image that has been modified |
| 14 | vector-based image comprised of a plurality of vectors having respective defined staring [sic] and ending points having predetermined positions relative to said picture elements | vector based image having coordinates referenced to the coordinates of the pixels of the raster image determined by the user |
| 14 and 108 | maintained/maintaining in registration with | the vector-based image and the raster image are kept in sync with each other |
| 14 | merging said first and second images to provide an edited raster image | combining a vector image with a pre-existing raster image to create an edited raster image |

| 108 | merging said vector-based image with said first raster image to generate a new raster file | combining a vector image with a pre-existing raster image to create a new raster image where the edited raster image is stored |
| --- | --- | --- |
| 114 | real world units | units of measurement, such as inches, representing the actual dimension of the subject |

You, the jury, are bound by these constructions and interpretations, and you must accept them as correct. You must use these same meanings for your decisions on infringement and on invalidity. Any claim language that I have not interpreted for you in the above chart is to be given its ordinary and customary meaning as understood by one of ordinary skill in the art.

## DIRECT INFRINGEMENT

To prove direct infringement, American Imaging must prove by a preponderance of the evidence that each accused product performed every limitation of any one of claims 14, 15, 108 and 114 of the '384 Patent.

Direct infringement of a method claim requires evidence that a party perform or use every step of the claimed method. Thus, the claims are infringed only if (1) AutoCAD 2011 is capable of performing every step of each asserted claim and (2) Autodesk used each accused product to perform every step of each asserted claim, considered separately. Therefore, if an Autodesk product does not perform every step of a claim, then it does not infringe that claim.

To decide the first part, *i.e.*, whether any accused product is capable of performing every step of each asserted claim, you must compare that claim to the functionality of the AutoCAD 2011 product. However, proof of direct infringement does not require that the alleged infringer intended to infringe or actually knew of the patent involved in the suit. Direct infringement may

occur even if an alleged infringer believes in good faith that what it is doing is not an infringement of any patent.

Although you have heard evidence about American Imaging's Luna products and Autodesk's AutoCAD products, in deciding the issue of infringement, you should not compare Autodesk's AutoCAD products to American Imaging's Luna products. Rather, when making your decision regarding infringement, you must compare the accused AutoCAD products to the asserted claims of the '384 patent.

## OPEN-ENDED OR "COMPRISING" CLAIMS

The beginning, or preamble, of each of claims 14, 15, 108, and 114 uses the word "comprising." "Comprising" means "including" or "containing, but not limited to." For example, a claim to a table *comprising* a tabletop, legs, and glue would be infringed by a table that includes a tabletop, legs, and glue, even if the table also includes wheels on the table's legs.

## INDEPENDENT AND DEPENDENT CLAIMS

The patent in issue contains both independent and dependent claims. An "independent claim" sets forth all of the requirements, or limitations, that must be met in order to be covered by that claim. Thus, it is not necessary to look at any other claim to determine what an independent claim covers. Claims 14 and 108 of the '384 patent are independent claims.

A "dependent claim" does not, itself, recite all of the requirements, or limitations, of the claim but refers to another, independent claim for some of its requirements. In this way, the claim "depends" on an independent claim. A dependent claim includes each of the limitations of the independent claim to which it refers and then adds one or more additional requirements. To determine what a dependent claim covers, it is necessary to look at both the dependent claim and any other claim(s) to which it refers. A product that meets all of the requirements of both the dependent claim and the claim(s) to which it refers is covered by that dependent claim. In this

case, claims 15 and 114 are dependent claims.

For example, in order to find infringement of claim 15 of the '384 patent, which depends on independent claim 14, you must find that claim 14 of the patent has been infringed. Similarly, in order to find infringement of claim 114 of the patent, which depends on both independent claim 14 and independent claim 108, you must determine that one or both of claims 14 and 108 were infringed. If you decide that an independent claim has not been infringed, then its dependent claim cannot have been infringed. If you decide that an independent claim has been infringed, you must then separately determine whether each additional step of the dependent claim has also been included in the accused product. If each additional step has been included, then the dependent claim has been infringed.

## INDUCING PATENT INFRINGEMENT

A party induces patent infringement if it purposefully causes, urges, or encourages another to infringe the claims of a patent. As with direct infringement, you must determine whether there has been active inducement to infringe on a claim-by-claim basis. Inducing infringement cannot occur unintentionally. This is different from direct infringement, which can occur unintentionally.

American Imaging claims inducement of patent infringement and must prove by a preponderance of the evidence that:

1. Autodesk actively encouraged or instructed another person on how to use a product or perform a process in a way that infringes at least one patent claim;

2. Autodesk knew of the patent at that time;

3. Autodesk knew, or willfully ignored, that the encouragement or instructions would result in infringement of at least one patent claim; and

4. The other person directly infringed at least that one patent claim.

American Imaging must prove that someone other than Autodesk has directly infringed. If there is no direct infringement by anyone else, then Autodesk cannot have induced infringement. To prove identified instances of direct infringement, American Imaging must prove that uses of the accused AutoCAD products necessarily directly infringe the asserted claims of the '384 patent or prove specific acts of direct infringement by others that were induced by Autodesk.

## INVALIDITY

Patent invalidity is a defense to patent infringement. Even though the PTO has issued the '384 patent and the patent is thus presumed to be valid, you have the ultimate responsibility for deciding whether the asserted claims of the '384 patent are valid, but on all of its invalidity defenses, Autodesk's burden of proof is clear and convincing evidence.

For a patent to be valid, the subject matter claimed in the patent must be new, useful, and constitute an advance that was not obvious to one of ordinary skill in the art at the time that subject matter was created or invented. A patent cannot take away from people their right to use what was known or what would have been obvious from what was known when the patent application was filed.

Here, Autodesk contends that claims 14, 15, 108, 114 of the '384 patent already existed in the prior art and are thus invalid as "anticipated" or "obvious" in light of the prior art. Autodesk also contends that the subject matter claimed in all of the asserted claims of the '384 patent is invalid due to the "on-sale bar."

## PRIOR ART

"Prior art" refers to items that were publicly known or that have been used or offered for sale in the United States, and to publications or patents that disclose the claimed invention or

some elements of the claimed invention.  To qualify as prior art, an item, publication, or patent must have been made, known, used, published, or patented either before the invention was made or more than one year before the filing date of the patent application.  The date that is one year prior to the filing of the patent application is also known as the "critical date."  In this case, the critical date is June 14, 1988.

### ANTICIPATION

A person cannot obtain a patent if someone else already has made something that meets all the steps and limitations of the claims.  Simply put, the invention must be new.  If the patented subject matter is not new or novel, it is said to be "anticipated by the prior art."  Under our patent laws, an invention that is "anticipated" is not entitled to patent protection.  In this trial, Autodesk contends that the asserted claims of the '384 patent were anticipated by certain prior art references: (1) SuperPaint 1.0; (2) FORM:DRAFT 4.1; (3) Canvas 1.0; (4) MiniCAD 3.0; (5) AutoCAD Release 9 with LunaLink add-on; and (6) AutoCAD Release 9 with CAD Overlay add-on.

To anticipate a claim, each and every step or limitation in the claim must be present in a **single** device or **single** system that predates the claimed invention, or must have been described in a single prior art reference that predates the claimed invention.  Accordingly, you may consider:

1. whether the claimed invention was already publicly known or publicly used by others in the United States before June 14, 1988; or

2. whether the claimed invention was already patented or described in a printed publication anywhere in the world before June 14, 1988.

You may not combine two or more separate items of prior art to prove anticipation.  In determining whether every one of the elements of the claimed subject matter is found in the prior

art, the disclosure in the prior art does not have to be in the same words as the claim, but all of the requirements of the claim must be there, either stated or necessarily implied, so that someone of ordinary skill in the field, looking at that one prior art reference, would be able to make and use at least one embodiment of the claimed invention. In analyzing a prior art publication or patent, the text, figures, and diagrams contained within the reference should be considered.

In determining whether an item of prior art anticipates a patent claim, you should take into consideration not only what is expressly disclosed in that prior art but also what inherently resulted from its practice. This is called "inherency." To establish inherency, the evidence must make clear that practice of the prior art would necessarily result in the missing descriptive matter.

It is not required, however, that the person of ordinary skill would have recognized the inherent disclosure. The fact that a characteristic is a necessary feature or result of prior-art embodiment is enough for inherent anticipation, even if that fact was unknown at the time of the prior invention. For instance, if an invention that is known to fertilize soil, unbeknownst to the people who use the invention, also reduces soil density, that invention would still inherently anticipate a subsequent invention that uses the same technology with the specific goal to reduce soil density.

A reference can be an anticipating reference even if it does not have the same purpose or goal as the claimed invention. Indeed, a reference can be anticipating even if, after disclosing the invention, the reference then discloses alternatives to the invention or disparages the invention. Additionally, there is no requirement that any person has attempted or successfully carried out what is disclosed in the reference, or achieved the goals of the reference.

You must keep these requirements in mind and apply them to each claim of anticipation

you consider in this case.

## OBVIOUSNESS

A patent claim is invalid if the claimed invention would have been "obvious" to a person of ordinary skill in the field of the patented subject matter as of June 14, 1988.  In contrast to anticipation, obviousness does not require that all the requirements of the claim be found in a single prior art reference. Instead, if a person of ordinary skill in the field of the invention would have come up with the claimed invention by combining more than one item of prior art, then it is obvious.  Additionally, obviousness can be found with a single item of prior art, combined with knowledge of one of ordinary skill in the art, as of June 14, 1988.

But a patent claim that is composed of several requirements cannot be proved obvious merely by demonstrating that each of its requirements was independently known in the prior art. Although common sense directs one to look with care at a patent application that claims a combination of known requirements, it can be important to identify a reason that would have prompted a person of ordinary skill in the art to combine the requirements in the way that the claimed new invention does.  This is so because inventions in most, if not all, instances rely upon building blocks long since uncovered, and claimed discoveries will, almost necessarily, be combinations of what, in some sense, is already known.  Accordingly, you may evaluate whether there was some teaching, suggestion, or motivation to arrive at the claimed invention before the time of the claimed invention, although proof of this is not a requirement to prove obviousness. Teachings, suggestions, and motivations may be found in written references, including the prior art.  However, teachings, suggestions, and motivations may also be found within the knowledge of a person of ordinary skill in the art, including inferences and creative steps that a person of ordinary skill in the art would employ.  Additionally, teachings, suggestions, and motivations

may be found in the nature of the problem solved by the claimed invention, or any need or problem known in the field of the invention at the time of, and addressed by, the invention.

Therefore, in evaluating whether such a claim would have been obvious, you should consider:

1. whether the party claiming obviousness, which in this case is Autodesk, has identified a reason that would have prompted a person of ordinary skill in the art to combine the requirements or concepts from the prior art in the same way as in the claimed invention;

2. whether the claimed invention applies a known technique that had been used to improve a similar device or method in a similar way; or

3. Whether the claimed invention would have been obvious to try, meaning that the claimed innovation was one of a relatively small number of possible approaches to the problem with a reasonable expectation of success by those skilled in the art.

But you must be careful not to determine obviousness using hindsight; many true inventions can seem obvious after the fact. You should put yourself in the position of a person of ordinary skill in the art at the time the claimed invention was made, and you should not consider what is known today or what is learned from the teaching of the patent.

The ultimate conclusion of whether a claim is obvious should be based on your determination of four factors, all of which you must evaluate in determining whether Autodesk has established that the claimed invention is obvious:

1. You must decide the level of ordinary skill in the art that someone would have had at the time the claimed invention was made.

2. You must decide the scope and content of the prior art.

3. You must decide what difference, if any, existed between each asserted claim of the '384 patent and the prior art; and

4. You must decide what additional considerations, if any, indicate that the supposed invention was obvious or not obvious.

*Level of Ordinary Skill in the Art*

Obviousness is determined from the perspective of a person of ordinary skill in the art. This person is presumed to know all of the prior art, not just what the inventor may have known. When faced with a problem, this person is able to apply his or her experience and ability to the problem and to look to any available prior art to help solve the problem.  It is up to you to decide the level of ordinary skill in the art as of June 14, 1988.  You should consider all of the evidence introduced at trial in making this decision, including:

1.   The level of education and experience of people working in the field;

2.   The types of problems encountered by people working in the field, and the solutions found to those problems; and

3.   The sophistication of the technology in the field.

American Imaging contends that the level of ordinary skill in the art was a Bachelor's Degree in computer or electrical engineering and two or more years of experience in software programming.  Autodesk contends that the level of ordinary skill in the art was the equivalent of at least a Bachelor of Science Degree in computer science plus at least two years of experience in computer graphics related programming.

*Scope of the Prior Art*

In determining the scope and content of the prior art for purposes of determining obviousness, you must decide whether a reference is pertinent or analogous to the claimed invention.  Pertinent or analogous prior art includes prior art in the same field of endeavor as the claimed invention, regardless of the problems addressed by the prior art reference, and prior art from different fields reasonably pertinent to the particular problem with which the claimed invention is concerned.

*Differences, if any, Between the Asserted Claims and the Prior Art*

You should also analyze whether there are any relevant differences between the prior art and the claimed invention from the viewpoint of a person of ordinary skill in the art at the time of the invention. Your analysis must determine the impact, if any, of such differences on the obviousness or nonobviousness of the invention as a whole, not merely some portion of it. In other words, this analysis must be applied against the entire claim scope.

In analyzing the relevance of the differences between the claimed invention and the prior art, you do not need to look for a precise teaching of the prior art directed to the subject matter of the claimed invention. Instead, you may take into account the inferences and creative steps that a person of ordinary skill in the art would have employed in reviewing the prior art at the time of the invention. For example, the combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results. Moreover, when a work is available in one field of endeavor, design incentives and other market forces can prompt variations of it, either in the same field or a different one. If a person of ordinary skill can implement a predictable variation, the claim is likely obvious. For the same reason, if a technique has been used to improve one device, then a person of ordinary skill in the art would find it obvious to improve similar devices in the same way.

To find obviousness, you must consider whether a reason existed at the time of the invention that would have prompted a person of ordinary skill in the art in the relevant field to combine the known elements in the way the claimed invention does. That reason could come from the prior art, the background knowledge of one of ordinary skill in the art, the nature of the problem to be solved, market demand, and/or common sense.

If you find that a reason existed at the time of the invention to combine the elements of the prior art to arrive at the claimed invention, this evidence would make it more likely that the

claimed invention was obvious. A determination of obviousness does not require absolute

predictability of success; all that is required is a reasonable expectation of success.

*Additional Considerations*

Before deciding the issue of obviousness, you must also consider certain factors that, if

established, may indicate, in response to the claim of obviousness, that the invention would *not*

have been obvious. Some of these factors include:

1. *Commercial success*: Was a product made according to the claimed method commercially successful due to the merits of the subject matter claimed in the patent?

2. *Failure by others*: Did others try, but fail, to solve the problem solved by the subject matter of the claims?

3. *Long-felt need*: Was there a long-felt, but unsolved, need for the solution provided by the claimed invention as of June 14, 1988?

4. *Unexpected superior results*: Were the results of the claimed method unexpected?

These objective indications are relevant to obviousness only if there is a connection, or

nexus, between them and the subject matter covered by the patent claim. However, if American

Imaging can prove commercial success for its invention by showing, for example, significant

sales of a product made according to the method, you may presume that the commercial success

is due to the patented invention. This presumption may not be rebutted by mere argument, but

instead, must be based on evidence. Commercial success or the failure of others are relevant to

obviousness only if that occurrence is attributable to a feature of the patent claim. If the

commercial success is a result of innovative marketing or contributions of a third party, and not

to a patented feature, then you should not consider it to be an indication of non-obviousness. So,

too, if the feature that creates the commercial success was known in the prior art, the success is

not pertinent.

The presence of any of the above objective indications may suggest that the invention

was not obvious. No factor alone is dispositive, and you must consider the obviousness or non-obviousness of the invention as a whole.

**ON-SALE BAR**

A patent claim may be invalid because of the "on-sale bar" which, in this case, renders a patent claim invalid if, before June 14, 1988, an embodiment of the claimed invention was:

    1. Commercially offered for sale in the United States; *and*

    2. Ready for patenting by

        a. proof of reduction to practice, *or*

        b. proof that the inventor had prepared drawings or other descriptions of the supposed invention that were sufficiently specific to enable a person skilled in the art to practice the supposed invention.

As to the first prong, the parties have stipulated that there was a commercial offer for sale in the United States of an embodiment of the claimed invention before June 14, 1988. As to the second prong, the invention must have been ready for patenting at the time the alleged offer for sale was made. An invention is ready for patenting when it is reduced to practice or when the inventor has prepared drawings or other descriptions of the invention sufficient to allow a person of ordinary skill in the art to make or use the invention. It is sufficient that an embodiment, not necessarily the preferred embodiment, of the claimed invention was reduced to practice by the critical date. Similarly, it is sufficient that the disclosure documents sufficiently enabled one skilled in the art to practice an embodiment, not necessarily the preferred embodiment, of the claimed invention. The reduction to practice and sufficient disclosure for enablement are alternative grounds for finding the "ready for patenting" prong for on-sale bar, and thus should not be combined. A claimed invention is ready for patenting when there is reason to believe it would work for its intended purpose.

# VERDICT FORM

## DIRECT INFRINGEMENT

### QUESTION 1(A)

Has American Imaging proven by a preponderance of the evidence that AutoCAD 2011 is capable of performing every step of the following claims?

|  | Yes? | No? |
|---|---|---|
| Claim 14 |  | ✕ |
| Claim 15 |  | ✕ |
| Claim 108 |  | ✕ |
| Claim 114 |  | ✕ |

If you answered "yes" to any part of Question 1(A), then proceed to Question 1(B).  Otherwise, proceed to Question 3.

**QUESTION 1(B)**

If you answered "yes" on any claim in response to Question 1(A), then place a check mark for each specific AutoCAD product for which American Imaging has proven by a preponderance of the evidence that Autodesk used to perform the steps of that claim.

|  | Claim 14 | Claim 15 | Claim 108 | Claim 114 |
|---|---|---|---|---|
| **AutoCAD** |  |  |  |  |
| **AutoCAD LT** |  |  |  |  |
| **AutoCAD Map 3D** |  |  |  |  |
| **AutoCAD Architecture** |  |  |  |  |
| **AutoCAD Civil** |  |  |  |  |
| **AutoCAD Civil 3D** |  |  |  |  |
| **AutoCAD Electrical** |  |  |  |  |
| **AutoCAD Land Desktop** |  |  |  |  |
| **AutoCAD Mechanical** |  |  |  |  |
| **AutoCAD MEP** |  |  |  |  |
| **AutoCAD P&ID** |  |  |  |  |
| **AutoCAD Plant 3D** |  |  |  |  |

| | | | | |
|---|---|---|---|---|
| **AutoCAD Structural Detailing** | | | | |

Proceed to Question 2(A).

## INDUCED INFRINGEMENT

### QUESTION 2(A)

Answer this Question only as to those claims for which you found infringement in your answer to Question 1(A).  Has American Imaging proven by a preponderance of the evidence that Autodesk induced its customers to infringe any of the following claims of the '384 patent?

|  | Yes? | No? |
|---|---|---|
| Claim 14 | | |
| Claim 15 | | |
| Claim 108 | | |
| Claim 114 | | |

If you answered "yes" on any claim in response to Question 2(A), then place a check mark in response to Question 2(B) for each AutoCAD product as to which you found Autodesk induced infringement.

## QUESTION 2(B)

| | Claim 14 | Claim 15 | Claim 108 | Claim 114 |
|---|---|---|---|---|
| **AutoCAD** | | | | |
| **AutoCAD LT** | | | | |
| **AutoCAD Map 3D** | | | | |
| **AutoCAD Architecture** | | | | |
| **AutoCAD Civil** | | | | |
| **AutoCAD Civil 3D** | | | | |
| **AutoCAD Electrical** | | | | |
| **AutoCAD Land Desktop** | | | | |
| **AutoCAD Mechanical** | | | | |
| **AutoCAD MEP** | | | | |
| **AutoCAD P&ID** | | | | |
| **AutoCAD Plant 3D** | | | | |
| **AutoCAD Structural Detailing** | | | | |

Proceed to Question 3.

**INVALIDITY – ANTICIPATION**

**QUESTION 3**

Has Defendant Autodesk proven by clear and convincing evidence that any of the following claims of the '384 patent were anticipated by the following references, considered individually, but not in combination? Answer yes or no for each reference as to each claim.

| | Claim 14 | Claim 15 | Claim 108 | Claim 114 |
|---|---|---|---|---|
| **SuperPaint 1.0** | YES | YES | YES | YES |
| **FORM:DRAFT 4.1** | YES | YES | YES | YES |
| **Canvas 1.0** | YES | YES | YES | YES |
| **MiniCAD 3.0** | YES | YES | YES | YES |
| **AutoCAD Release 9 with LunaLink add-on** | YES | YES | YES | YES |
| **AutoCAD Release 9 with CAD Overlay add-on** | YES | YES | YES | YES |

Proceed to Question 4.

## INVALIDITY – OBVIOUSNESS

### QUESTION 4

Has Autodesk proven by clear and convincing evidence that any of the following claims of the '384 patent are invalid as obvious to a person of ordinary skill in the art on June 14, 1988, based on any of the following combinations of references?

|  | Claim 14 | Claim 15 | Claim 108 | Claim 114 |
|---|---|---|---|---|
| **SuperPaint 1.0 and the knowledge of one of ordinary skill in the art** | YES | YES | YES | YES |
| **LunaLink and AutoCAD Release 9 and the knowledge of one of ordinary skill in the art** | YES | YES | YES | YES |
| **FORM:DRAFT 4.1 and the knowledge of one of ordinary skill in the art** | YES | YES | YES | YES |
| **Canvas 1.0 and the knowledge of one of ordinary skill in the art** | YES | YES | YES | YES |
| **MiniCAD 2.0 and MiniCAD 3.0 and the knowledge of one of ordinary skill in the art** | YES | YES | YES | YES |
| **SuperPaint 1.0 and Canvas 1.0 and the knowledge of one of ordinary skill in the art** | YES | YES | YES | YES |
| **SuperPaint 1.0 and MiniCAD 2.0/3.0 and the knowledge of one of ordinary skill in the art** | YES | YES | YES | YES |

| AutoCAD Release 9 with CAD Overlay add-on and the knowledge of one of ordinary skill in the art | YES | YES | YES | YES |
| --- | --- | --- | --- | --- |

Proceed to Question 5.

## INVALIDITY – ON-SALE BAR

### QUESTION 5

Has Autodesk proven by clear and convincing evidence that any of the following claims of the '384 patent are invalid because the claimed invention was commercially offered for sale in the U.S. and ready for patenting on or before June 14, 1988?

|  | Yes? | No? |
|---|---|---|
| Claim 14 | X | |
| Claim 15 | X | |
| Claim 108 | X | |
| Claim 114 | X | |

Proceed to Final Instructions.

# FINAL INSTRUCTIONS

To reach a verdict, all of you must agree. Your verdict must be unanimous. Your deliberations will be secret. You will never have to explain your verdict to anyone.

It is your sworn duty as jurors to discuss the case with one another in an effort to reach agreement if you can do so. Each of you must decide the case for yourself, but only after full consideration of the evidence with the other members of the jury. While you are discussing the case, do not hesitate to re-examine your own opinion and change your mind if you become convinced that you are wrong. However, do not give up your honest beliefs solely because the others think differently, or merely to finish the case. Remember that in a very real way you are judges—judges of the facts. Your only interest is to seek the truth from the evidence in the case.

I want to advise you that although our court reporter has taken down all of the testimony, it is not done in such a way that we can read back or furnish testimony to you at your request. Only when you have a specific disagreement as to a particular witness's testimony on a specific subject can we attempt to obtain that information for you.

If you need to communicate with me during your deliberations, the foreperson should write the message and give it to the court security officer. I will always first show the attorneys your question and my response before I answer your question. I will either reply to you in writing or bring you back into the courtroom to answer your message. I caution you, however, with respect to any message or question you might send, that you should never state or specify your numerical division at the time.

When you retire to the jury room to deliberate, you will be given this charge and the exhibits that the Court has admitted into evidence. You should select one of your members as your foreperson, who will help to guide your deliberations and will speak for you here in the

courtroom.  During your deliberations you will set your own work schedule, deciding for

yourselves when and how frequently you wish to recess and for how long.  If you recess during

your deliberations, follow all of the instructions that I have given you concerning your conduct

during the trial.  After you have reached a unanimous verdict, your foreperson must fill in your

answers to the written questions and sign and date the verdict form.  Unless instructed otherwise,

you are not to disclose your numerical division on any question.  Finally, do not reveal your

answers to the questions until I direct you to do so.

      **DATED**:  October __16__, 2013

 

 

_____
BARBARA M. G. LYNN
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF TEXAS

## **VERDICT OF THE JURY**

We, the jury, have answered the above and foregoing questions as indicated, and herewith return the same into Court as our verdict.

**DATED**: October _16_ , 2013.

REDACTED